**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8

NOT FOR CITATION

9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

SAN JOSE DIVISION

12
13    IP Learn, LLC.,                                        NO. 5:02-cv-02634-JW

14                    Plaintiff,                             **ORDER RE: CLAIMS
                                                            CONSTRUCTION**
          v.
15
      Saba Software, Inc.,
16
                      Defendant.
17    _____/

18                                  I.  INTRODUCTION

19          On February 7, 2003, the Court conducted a hearing pursuant to the holding in Markman v.

20    Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) in order to determine the meaning of language

21    used in several claims contained in U.S. Patent Nos. 5,779,486 ("the '486 patent"); 5,934,909 ("the '909

22    patent"); 6,118,973 ("the '973 patent"); 6,126,448 ("the '448 patent"); and, 6,398,556 ("the '556 patent").

23    Attorneys Thomas Friel, Jr., James Brogan, Wayne Stacy and Douglas Robbins appeared on behalf of

24    Plaintiff IP Learn, LLC ("IP").  Attorneys Michael Jacobs, Wesley Overson and Frederick Chung appeared

25    on behalf of Defendant Saba Software, Inc. ("Saba").

26                                  II.  BACKGROUND

27          Saba is in the business of providing learning management systems for businesses.  Saba sells both

28    software systems as well as related professional services to customers such as Amazon.com, Cisco

1  Systems and Ford Motor Company. IP is a company founded by Peter P. Tong and Chi Fai Ho, the

2  inventors of the patents at issue in this litigation. IP is engaged in the business of licensing and enforcing

3  the inventors' patents. IP filed this action alleging that Saba infringes the '486, '909, '973, '448 and '556

4  patents.

5       The '486 patent claims an educational system for assessing a student's understanding in a tested

6  subject and for generating recommendations based on that assessment for the student's future use. The '909

7  patent claims this same subject matter except that it contains method claims based on a computer-aided

8  learning method. The '973 patent also claims this same system and method, but applies them in a

9  computer-network environment. The '909 and '973 patents are direct descendants of the '486 patent and

10 they all share the same specification. These three patents are collectively referred to as the '486 family.

11      The '448 patent relates to a computer-aided method and apparatus for identifying and retrieving

12 learning materials for a job position. The objective of the claimed apparatus is to locate, extract and

13 present documents necessary to teach a user the skills necessary to succeed in a particular job position.

14      The '556 patent claims a method and system whereby an "institute user" pays money to access

15 personal information about a "learning user" and the "learning user" gets access to materials to learn. The

16 objective of this patent is to shift the costs of learning materials from an individual user to an institutional

17 user, such as in the employee-employer context.

18      In order to file motions for summary judgment at an early stage in this litigation, the parties agreed

19 to present some limited claim terms to the Court for construction. The parties request that the Court

20 construe the meaning of the terms "line item"; "analysis rules"; "recommendation generator"; and "report

21 generator" as those terms are contained in the '486 patent family. The parties also request that the Court

22 construe the meaning of the term "searching" as contained in the '448 patent, as well as the term "the

23 institute user pays to access materials regarding the at least one learning user" as set forth in the '556

24 patent.

25                                    III. STANDARDS

26      In Markman v. Westview, 52 F.3d 967 (Fed. Cir. 1995), the Federal Circuit Court held that

27 interpretation and construction of patent claims, which define the scope of the patentee's rights under the

28                                          2

United States District Court

For the Northern District of California

1   patent, is a matter of law exclusively for the court. Id. The court has the power and obligation to construe

2   as a matter of law the meaning of language used in the patent claim. Id. As such, "[a] patent covers the

3   invention or inventions which the court, in construing its provisions, decides that it describes and claims."

4   Id.

5           "Claim interpretation begins with an examination of the intrinsic evidence, *i.e.*, the claims, the rest

6   of the specification and, if in evidence, the prosecution history. [citations omitted]. Courts may also use

7   extrinsic evidence (*e.g.*, expert testimony, treatises) to resolve the scope and meaning of a claim term."

8   CCS Fitness, Inc. v. Brunswick Corporation, 288 F.3d 1359, 1365 (Fed. Cir. 2002).

9                                    IV.  DISCUSSION

10          A.      Line Item

11          The term "line item" appears many times throughout the '486 patent family. The term can be found

12  in claims 13, 14, 15, 16, 19,, 36, 40, 41, 45, 50 and 54 of the '486 patent. It is also set forth in claims 5,

13  11, 21, 23, 25, 27 and 29 of the '909 patent and in claims 4, 9, 10, 15, 19, 20, 21, 23, 25 and 26 of the '973

14  patent. In the majority of these claims, the term is used as it is in claims 14 and 15 of the '486 patent:

15          14.  An educational system as recited in claim 13 wherein for the student to
            advance to a **line-item**, the student has to satisfy all of the prerequisites
16          of that **line-item** according to the complexity-hierarchy.
            15.  An educational system as recited in claim 1 wherein:
17          the subject is divided into **line-items** with at least one
                **line-item** being more difficult than another **line-item**;
18          the tests include questions from a plurality of **line-items**;
            the score generator based on the latest and the prior-to-
19              the-latest test results generates an overall score for each
                **line-item** in the latest test;
20          the analysis rules are a set of relationship rules, which
                determine the relationship among the **line-items**; and
21          the recommendation generator is an inference engine,
                which determines the student's level of understanding
22              in each **line-item** in at least one test by applying the set
                of relationship rules on the overall scores in at least that
23              test.

24          Based on this representative language, IP contends that this term should be given its plain and

25  ordinary meaning, which it contends is, "an item within an area of learning." IP points out that case law

26  makes clear that a patentee need not "describe in the specification every conceivable and possible future

27  embodiment of his invention." Rexnord Corporation v. Laitram Corporation, 274 F.3d 1336, 1344 (Fed.

28                                                                          3

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1 Cir. 2001). Rather, the Court may determine whether the patentee clearly set forth a definition of a

2 disputed claim term in either the specification or prosecution history or distinguished such term from prior

3 art on the basis of a particular embodiment. See CCS Fitness, Inc. v. Brunswick, 288 F.3d 1359 (Fed.

4 Cir. 2002).

5 Saba contends that IP's proposed construction is too broad and fails to define appropriate

6 boundaires for the term. Saba argues that since the specifications and claims consistently refer to a system

7 of learning in which areas are divided into further subsidiary levels, the scope of the term is defined as,

8 "a subdivision of an area of learning that occupies a subsidiary level in a systemwide taxonomy of areas

9 of learning." According to Saba, the "line-item" must be the fourth level or subcategory in this system

10 of learning since the patent inventors distinguished prior art on the basis that the prior art contained a two-

11 level taxonomy. Saba contends that the specification set forth in the '486 patent operates under the

12 assumption that the "line-item" falls after the "subject;" "major-topic;" and, "minor topic."

13 B. Analysis Rules

14 The term "analysis rules" appears in claims 1, 2, 13, 15 and 54 of the '486 patent, as well as in

15 claims 1, 8, 11 and 29 of the '909 patent and claim 17 of the '973 patent. In these claims, the term is used

16 to describe an educational system for assessing a student's understanding in a subject comprising

17 ..."accessing a set of **analysis rules**"....

18 IP again requests that the Court construe this term according to its plain and ordinary meaning.

19 IP contends, therefore, that the term means "rules for analyzing a set of facts." IP alleges that Saba's

20 proposed definition improperly invites the Court to read the preferred embodiments from the

21 specifications directly into the claims.

22 Saba contends that the term means "rules that describe the relationships among areas of learning,

23 where the areas of learning are classified according to a systemwide taxonomy." Saba argues that this

24 definition is derived from the specifications of the '486, '909 and '973 patents and it is clear that the

25 specifications disclose two types of analysis rules, "relationship rules" and "pre-requisite rules." All of

26 these rules describe the relationships among areas of learning according to a hierarchy of areas of

27 learning. Saba argues that these relationships must, therefore, be incorporated into the definition of the

28 4

United States District Court

For the Northern District of California

1   term in order to afford the term meaning. Saba contends that, again, IP's proposed definition is too broad

2   and does not help define the meaning of the term.

3   C.      Recommendation Generator/Generate A Recommendation

4           The terms "recommendation generator" and "generate a recommendation" are contained in claims

5   1, 2, 13, 15, 19, 50 and 54 of the "486 patent. They are also found in claims 1, 21, 23 and 29 of the "909

6   patent, as well as in claims 1, 19, 23, 24 and 26 of the '973 patent. These claims describe an educational

7   system for assessing a student's understanding in a subject comprising..."a **recommendation generator**

8   coupled to the score generator for:...."

9           IP argues that this term means "produce a suggestion for a course of action." Again, IP contends

10  that this is the plain and ordinary meaning of the term which should govern in this instance since there is

11  no specific or different definition set forth by the inventors in the patents.

12          Saba contends that, although the parties are close in their proposed construction, this term must

13  be related to the analysis rules. Therefore, Saba argues that the term means "to produce suggestions for

14  enhancing a student's understanding in a tested subject, as a result of the application of analysis rules to

15  a student's test scores." Saba bases this definition on the claim language contained in the '486 and the '909

16  patents and specifications and opines that the definition "provides appropriate boundaries" to the

17  dictionary meaning.

18  D.      Report Generator/Generate A Report

19          The term "report generator" or "generate a report" appears in claims 16 and 45 of the '486 patent

20  and in claims 12, 13 and 25 of the '909 patent. The terms are also stated in claims 11, 12, 20 and 25 of

21  the '973 patent. These claims describe an educational system which..."compromises a **report generator**

22  coupled to the recommendation generator...."

23          IP contends that this term simply means "a module that produces a report that is based on a

24  suggestion for a course of action." Saba argues that its proposed construction tracks its proposed

25  construction of the recommendation generator and should be adopted for the same reasons as discussed

26  above. Saba contends that the term means "producing a report, using a specified format, which contains

27  suggestions for enhancing a student's understanding in a tested subject, as a result of the application of

28

1  analysis rules to a student's test scores."

2  E.      Searching

3      The term "**searching at least some of the documents to extract more than one document to**

4  **be the learning materials**" appears in the '448 patent in claims 1 and 34.  IP argues that this term means

5  "electronically searching at least some of the documents to extract more than one document to form the

6  learning materials" while Saba contends that the term means, "searching, by job position, a database of

7  documents and extracting the appropriate documents to be the learning materials for that job position."

8  Saba conceded at the <u>Markman</u> hearing, however, that the parties had substantially "come together" on

9  their definitions regarding this term.  The only apparent difference between the parties' proposed

10  definitions is whether the electronic search is by job position, as Saba argues, or by other positions such

11  as tasks or sub-jobs, as IP contends.

12  F.      Institute User Pays to Access Materials Regarding At Least One Learning User

13      The term "**the institute user pays to access materials regarding the at least one learning user;**

14  **a learning user is allowed to access materials to learn**" appears in several claims of the '556 patent.

15  IP contends that this phrase comprises five key components which it addresses separately.  First, IP argues

16  that an "institute user" means an "enterprise, organization, or individual that is interested in monitoring

17  learning users."  Next, IP contends that "pays to access" means "compensates to access."  A "learning

18  user" means, according to IP a "user that is interested in engaging in learning activities."  IP next alleges

19  that the term "materials regarding the at least one user" means "information concerning the learning user."

20  Finally, IP argues that the term "learning user is allowed to access the materials to learn" is unambiguous

21  and needs no construction.  Therefore, based on these definitions, IP contends that the entire term means

22  "the institute user compensates to access information concerning the learning user; a learning user is

23  allowed to access materials to learn."

24      IP asserts that the terms "institute user" and "learning user" are expressly defined in the

25  specification of the '556 patent. The specification states:

26          [T]here are at least two types of users: those who are primarily
            interested to use the apparatus 200 to work on learning materials,
27          and they are known as the learning users, 252; and those who are

28                                      6

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

primarily interested in learning about the learning users, and
they are known as the institute users, 254.

'556 patent, col. 4, lines 14-19.

Saba, on the other hand, argues that this term means "an organization pays an access fee in order to obtain personal information regarding an individual user and the individual user allowed access to this personal information so as to receive access to learning materials." It contends that this construction clarifies a critical aspect of the claim language, namely, what each party gives up and what it gets in return.

## V. FINDINGS

Based upon the claims, specifications and file history of the patents, as well as the oral argument of counsel, the Court finds that the definitions set forth below shall apply to the terms contained in the '486, '909', '973, '448 and '556 patents.

| | | |
|---|---|---|
| 1. | Line item: | In an educational system which assesses a student's level of understanding of a subject and in which the subject is divided into a hierarchy of complexity, a "line item" is a subdivision of the subject, with at least one line item being more difficult than another line item. |
| 2. | Analysis rules: | In an educational system which assesses a student's level of understanding of a subject, "analysis rules" is a set of rules used in the assessment. |
| 3. | Recommendation generator: | In an educational system which assesses a student's level of understanding of a subject, the "recommendation generator" is a system and method that produces a recommendation using the analysis rules. |
| 4. | Report generator: | In an educational system which assesses a student's level of understanding of a subject, the "report generator" is a module that produces a report. |
| 5. | Searching: | In an educational system which assesses a student's level of understanding of a subject, "searching" means electronically searching documents to create learning materials from the documents searched. |
| 6. | Institute user pays to access materials regarding at least one learning user: | In an educational system which assesses a student's level of understanding of a subject, "institute user pays to access materials regarding at least one learning user" means an organization pays a fee to access personal material regarding at least one individual user. |

7

United States District Court

For the Northern District of California

1

2   Dated: March 21, 2003              /s/ James Ware
                                       JAMES WARE
3                                      United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

02cv2634mark

22

23

24

25

26

27

28

8

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Brandon D. Baum     bbaum@cooley.com

Frederick S. Chung     fchung@mofo.com

Thomas J. Friel     tfriel@cooley.com

Michael A. Jacobs     mjacobs@mofo.com, cknisely@mofo.com

Andrew A. Kumamoto     kumamotoaa@cooley.com, prussell@cooley.com

Wesley E. Overson     woverson@mofo.com, rwright@mofo.com

B. Douglas Robbins     drobbins@cooley.com,

**Dated: 3/21/03**                                        **Richard W. Wieking, Clerk**

                                                          **By:__chambers for _____**
                                                             **Ronald L. Davis**
                                                             **Courtroom Deputy**

**United States District Court**
For the Northern District of California