| | |
|---|---|
| 1 | MICHAEL A. JACOBS (CA SBN 111664) |
| | WESLEY E. OVERSON (CA SBN 154737) |
| 2 | FREDERICK S. CHUNG (CA SBN 183337) |
| | DAVID E. MELAUGH (CA SBN 219477) |
| 3 | MORRISON & FOERSTER LLP |
| | 425 Market Street |
| 4 | San Francisco, California 94105-2482 |
| | Telephone: (415) 268-7000 |
| 5 | Facsimile: (415) 268-7522 |
| 6 | Attorneys for Defendant |
| | SABA SOFTWARE, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IP LEARN, LLC, | No.  C 02-02634 JW |
| Plaintiff and Counterdefendant, | **SABA SOFTWARE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY RE:  THE '486 FAMILY OF PATENTS** |
| v. | |
| SABA SOFTWARE, INC.; and DOES 1-10, | |
| Defendant and Counterclaimant. | Date: June 9, 2003<br>Time: 9:00 a.m.<br>Judge: Hon. James Ware<br>Courtroom: 8, 4th Floor |

**INTRODUCTION**

In its motions for summary judgment, Saba examined IP Learn's infringement contentions and picked eight claim elements in which the contentions failed to demonstrate any basis for infringement.[1]  In its opposition, as to three of those elements, IP Learn offers entirely new infringement contentions.  Saba has therefore filed objections to this violation of the Patent Local Rules, seeking to preclude IP Learn from profiting from this stratagem.

Even admitting IP Learn's last-ditch infringement arguments, however, IP Learn has yet to come forward with any fact demonstrating infringement of the patents in suit and does not in its opposition identify any factual dispute making summary judgment inappropriate.

IP Learn has likewise tried to surprise Saba and violate the Federal Rules by presenting validity argument and evidence not present in its interrogatory responses on that topic.  Saba's objections, filed separately, also address this tactic, and seek preclusion to protect Saba against such surprise, but again, even allowing IP Learn's new arguments, IP Learn has failed to rebut Saba's case that the '486 family of patents are invalid.

**ARGUMENT**

**I.   AS SET FORTH IN GREATER DETAIL IN SABA'S ACCOMPANYING OBJECTIONS, IP LEARN SHOULD BE PRECLUDED FROM OFFERING NEW INFRINGEMENT CONTENTIONS AND NEW VALIDITY ARGUMENTS IN VIOLATION OF THE LOCAL AND FEDERAL RULES.**

Despite Saba's early and voluntary production of extensive documentation, IP Learn's first preliminary infringement contentions ("PICs") were inadequate, often simply parroting back the claim language with no explanation as to where the claimed elements were found in the accused products.  Magistrate Lloyd ordered IP Learn to draft more detailed PICs, which were received on April 4, 2003.  (Declaration Of David E. Melaugh In Support Of Saba Software, Inc.'s Motions For Summary Judgment, filed May 5, 2003 ("Melaugh Opening Decl."), Ex. F ("Appendix A to Supplemental Disclosure of Asserted Claims and Preliminary Infringement

---

[1] Six elements are from U.S. Patent Nos. 5,779,486 (the "'486 patent"), 5,934,909 (the "'909 patent"), and 6,118,973 (the "'973 patent") (collectively, the "'486 family") and are addressed below; the remaining two are from U.S. Patent Nos. 6,126,448 (the "'448 patent") and 6,398,556 (the "'556 patent"), addressed in a separate motion and reply.

1  Contentions" ("PICs Chart")).)  The revised PICs were drafted ten months into the case and with

2  the benefit of tens of thousands of pages of Saba's technical documentation and the source code

3  for the accused products.  (Melaugh Opening Decl., ¶ 7.)  Similarly, on April 24, 2003, Saba

4  received interrogatory answers as to why IP Learn contends its patents are valid in the face of the

5  Hirmanpour and SuccessMaker references.  (Melaugh Opening Decl., Ex. N.)

6       Saba used those PICs and IP Learn's interrogatory responses as a target for its summary

7  judgment motion, constructing its arguments to refute what IP Learn claimed were its

8  infringement and validity contentions.  In those motions, Saba warned the Court that IP Learn

9  might violate the Federal and Local Rules by introducing new evidence and argument in an effort

10  to surprise Saba with new contentions.  (Saba Software, Inc.'s Motion For Summary Judgment Of

11  Non-Infringement And Invalidity Re: The '486 Family Of Patents, filed May 5, 2003 ("'486

12  Summ. J. Mot."), at 3-4.)

13       With its Opposition to Summary Judgment, IP Learn has proved Saba's warnings to be

14  correct.  In many instances, IP Learn's opposition briefing cites features or products as infringing

15  that are entirely absent from IP Learn's PICs.  (*See* Sections III.D & III.E, *infra*.)  And its validity

16  arguments are entirely new, with no basis in IP Learn's interrogatory responses.  IP Learn

17  supports these surprise allegations with a 141 paragraph "expert" declaration.  And at various

18  points, IP Learn has the temerity to criticize Saba for not offering a declaration refuting the

19  arguments it offered for the first time in its opposition.

20       As discussed in detail in Saba's Objections To Evidence And Contentions Offered By IP

21  Learn In Its Opposition To Saba's Motions For Summary Judgment, filed separately, IP Learn

22  should not be permitted to violate the Federal and Local Rules and surprise Saba with new

23  infringement contentions and validity argument that it did not disclose in its PICs and

24  interrogatory responses.

25      **II.   AS THE PATENT AND THE PRIOR ART ARE WITHIN THE COURT'S UNDERSTANDING, EXPERT TESTIMONY IS NOT ONLY NOT**
26      **NECESSARY, IT IS DISFAVORED.**

27       The thesis of IP Learn's opposition appears to be that because IP Learn came forward with

28  an expert and Saba has not, summary judgment should be rejected.  (*See*, *e.g.*, Opposition to Saba

1  Software's Motion for Summary Judgment of Non-Infringement and Invalidity Re: the '486
2  Family of Patents ("Opposition"), 2:14-16.)  That is plainly not the state of the law — an expert's
3  assistance is not necessary to determine non-infringement or invalidity, and, moreover, a judge
4  "cannot avoid the responsibility of deciding himself all questions of infringement and
5  anticipation, and the testimony of experts upon these issues is inevitably a burdensome
6  impertinence." *Kohn v. Eimer*, 265 F. 900, 902-03 (2d Cir. 1920) (Learned Hand, sitting by
7  designation) (affirming district court's finding that patent "speak[s] a language comprehensible
8  enough, without experts, for the disposal of the case"); *see also Grayson v. McGowan*, 543 F.2d
9  79, 80 (9th Cir. 1976) (when court "can understand the prior art and patent claims," expert
10 opinion is not necessary).

    Notably, neither IP Learn nor its expert ever suggest (and IP Learn therefore concedes)
that the patents in suit, the Saba's products, the Hirmanpour thesis, the SuccessMaker product, or
any other technology or topic at issue on summary judgment are outside the scope of common
understanding.  In similar circumstances, the court in *Refac International, Ltd. v. IBM*, 689 F.
Supp. 422, 429 (D. N.J. 1988) held:

> This Court holds that the interpretation of patent claims only requires an expert when the subject matter becomes sufficiently complex so that the Court does not feel competent to interpret what is before it.  Obviously, in a case where the subject matter involves chemical, mathematical, physical, electrical processes or the like, the Court must be guided by one "skilled in the art" in order to determine whether the invention may be used or made from the patent specification itself.
>
> On the other hand, when the subject matter is not deemed complex and is easily understandable without expert aid, and the words used can be interpreted in their ordinary, everyday sense, the Court is not bound to require or accept expert testimony.  In these instances, expert testimony is of little help.
>
> The requirement for experts can be seen as being on a continuum; in the case at bar, because the patent sets forth a system, the basis of which can be understood by this Court, the use of such expert testimony is not required and the Court on its own, based upon a fundamental understanding of the English language, is competent to interpret the patent before it.

*Id.* at 429 (internal citations omitted) (finding patent invalid for failure to particularly point out
claimed invention and failure to specify best mode).  IP Learn has made no claim that this case is

at a place on the "continuum" of complexity in which it will be insufficient for the Court to avail itself only of its "understanding of English language."[2] *Id.* Therefore, Saba's declarations are more than sufficient, and IP Learn's expert declaration carries no (and certainly no *special*) weight.

### III. IP Learn Has Not Come Forward With Specific Facts Demonstrating That Saba Learning Infringes The Asserted Claims Of The '486 Family.

#### A. IP Learn Has Totally Failed To Identify The Party That Performs The Methods Claimed By The '909 And '973 Patents.

All of the claims asserted from the '909 and '973 patents are method claims. Infringement of a method claim occurs only when a party practices the method claimed — merely making a product that enables the practice of the method is, at best, indirect infringement. *See, e.g., Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("A method claim is directly infringed only by one practicing the patented method."). In its opening motion, Saba stated that IP Learn had failed in its PICs to present any facts demonstrating that Saba indirectly infringes the patents in suit. ('486 Summ. J. Mot., at 4:19-21.) IP Learn has failed to provide any opposition on this point.

A defendant can indirectly infringe a patent in two ways: by actively inducing a third-party to infringe; or by selling a "material part" of the patented apparatus or process with knowledge that the part is especially made for an infringing use and not suitable for substantial noninfringing use (so-called "contributory" infringement). *See* 35 U.S.C. §§ 271(b) & (c).

To establish inducement, IP Learn must show the following: (i) Saba's actions induced a third-party to practice the claimed method; (ii) Saba knew or should have known that its acts would lead to infringement of the patent;[3] and (iii) the third-party directly infringed the patent.

---

[2] Indeed, IP Learn has taken the position that only three terms from the patents in suit require construction, and as to those three, it has offered particularly bare constructions to which Saba stipulates for the purposes of summary judgment. (Melaugh Opening Decl., Exs. H & I.)

[3] The Federal Circuit has also articulated a lower standard of intent, in which the infringer must merely have knowledge of the patent and intend to induce the acts that constitute infringement rather than intend to induce infringement. *See Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990). Even under the lower standard, however, IP Learn has failed to make the requisite showing, adducing no evidence that Saba had the requisite knowledge of the patent or that it induced a third-party to practice the method that infringed the patent.

1  *See Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002), *cert.
2  dismissed*, 123 S. Ct. 1779 (2003); *see also* 35 U.S.C. § 271(b).

3       This case is almost a year old, and extensive discovery has been taken. Nevertheless, IP
4  Learn has totally failed to present any facts even suggesting that, with knowledge of the patents in
5  suit, Saba induced a third party to directly infringe the asserted claims. To take just one example,
6  Mr. Horton claims that "instructional designers" use Saba Learning's question-weighting feature
7  to create "complexity-hierarchies" that infringe numerous asserted claims. (Declaration of
8  William Horton, filed May 19, 2003 ("Horton Decl."), ¶ 57.) Neither Mr. Horton nor IP Learn
9  identify these unnamed designers, and IP Learn has presented no evidence that Saba, with
10 knowledge of the patents, induced such persons to use its products in an infringing manner.

11       As to the claim of contributory infringement, IP Learn has similarly failed to come
12 forward with any facts demonstrating that Saba's products are a "material part" of a patented
13 apparatus or process or that Saba "knew that the combination for which [its product] was
14 [allegedly] especially designed was both patented and infringing." 35 U.S.C. § 271(c); *Aro Mfg.*
15 *Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

16       Summary judgment is therefore appropriate, on this ground alone, as to all asserted claims
17 from the '909 and '973 patents.

18
      **B.**     **IP Learn Has Failed To Demonstrate That Saba Learning Is A System
19              That Performs The Step Of "analyzing the student's prior-to-the-latest
             and the latest test results using the set of [analysis] rules to generate a
20              recommendation."**

21       Claims 1 and 2 of the '486 patent claim a system that performs the step of "analyzing the
22 student's prior-to-the-latest and the latest test results using the set of [analysis] rules to generate a
23 recommendation."[4]

24       As described in Saba's product literature, the declarations of Jodie Kalikow, and even the
25 declaration of William Horton, to the extent that Saba Learning involves multiple tests, the
26 following steps take place:

---

27       [4] Claims 1, 2, 4, 8, 11, and 12 of the '909 patent and claims 1, 2, 9, 10, 11, 12, 16, and 24
of the '973 patent are method claims that incorporate this step. (*See* Section III.A, *supra*.)
28

1.   1.   The user takes multiple tests within one catalog offering. (Horton Decl., ¶ 34; *see also id.*, Ex. 6 ("Saba Content Administrator Guide"), 6-33.)

2.   2.   The user's scores from multiple tests are combined into a single, total score (with some tests possibly weighted more heavily than others). (*Id.* ¶¶ 33 & 36; *see also id.*, Ex. 6 ("Saba Content Administrator Guide"), 6-33; Declaration Of Jodie Kalikow In Support Of Saba Software, Inc.'s Motions For Summary Judgment, filed May 5, 2003 ("Kalikow Opening Decl."), ¶ 13; Reply Declaration Of Jodie Kalikow In Support Of Saba Software, Inc.'s Motions For Summary Judgment, filed herewith ("Kalikow Reply Decl."), ¶ 3.)

3.   3.   The single, total score is compared against the passing score for the catalog offering. If the single, total score matches or exceeds the passing score, the user passes the offering and is granted the proficiency level in any competency or competencies taught by the offering (*e.g.*, the user is now considered "level 5" in "Case Management"). (Horton Decl., ¶¶ 33 & 41-42; *see also id.*, Ex. 6 ("Saba Content Administrator Guide"), 6-32; Kalikow Opening Decl., ¶ 12-13; Kalikow Reply Decl., ¶ 3.)

There is no dispute as to these steps. The parties' dispute concerns the infringement analysis.

The question before the Court is therefore quite basic: The patent claims a system in which the results of two tests (a latest and prior-to-latest) are compared and evaluated using analysis rules to generate a recommendation. The uncontroverted evidence demonstrates that when Saba Learning presents a user with multiple tests, the results of those tests are first combined into *one* total score before any "analysis" (here, passing vs. failing)[5] is done. Does the possibility that this single, total score can include a combination of multiple test scores mean that

---

[5] IP Learn also devotes considerable time to exploring the "competency gap analysis" feature of Saba Learning. As discussed in Saba's opening brief, this feature compares a user's current proficiency with a target proficiency and presents catalogue offerings designed to address any gaps. (Kalikow Opening Decl., ¶ 10.) To the extent that this involves "analysis," it is even further removed from the comparison of multiple test results claimed by the patent, as for this to take place, the user's proficiency level must have already been determined, a step that occurs after the scores are combined according to the three steps discussed above.

1  "analysis" done on that total score is "analysis" on the latest and prior-to-latest test results? Saba
2  asserts that the answer to that question is "no." The step of "analyzing the student's prior-to-the-
3  latest and the latest test results using the set of rules to generate a recommendation" plainly calls
4  for *two* inputs upon which analysis is done, and to the extent that any test "analysis" is taking
5  place in Saba Learning, it is on a *single*, total score.[6]

It is difficult to see how IP Learn can answer that question any differently, given the arguments it makes to save its patents from the SuccessMaker and Hirmanpour references. Paragraphs 134-135 of the Horton Declaration describe SuccessMaker as software that compares "the most recent session score" and "a cumulative score or scores." Similarly, paragraphs 119-122 of the Horton Declaration describe the program detailed in the Hirmanpour thesis as using the results of a prior-to-latest test to construct the questions given in the latest test. The results of that latest test are then reported, identifying areas in which the learner needs improvement. As characterized by Mr. Horton, both references involve analysis done on some form of composite. In both instances, IP Learn argues that this analysis is not the sort of analysis claimed by the "prior-to-latest and latest" limitations. As discussed above, however, the analysis of a composite in Saba Learning (the comparison of a single, total score calculated from the combination of multiple tests against the passing score) is the only form of analysis that takes place in Saba Learning. This is even further away from the claim than the systems in the prior art references, which Mr. Horton alleges do not meet the limitation.

### C. IP Learn Has Failed To Demonstrate That Saba Learning Involves "analysis rules, with a plurality of the rules being subject-specific."

Claims 1, 2, 54, and 55 of the '486 patent claim a system that accesses and applies "analysis rules, with a plurality of the rules being subject-specific."[7] As Mr. Horton's declaration indicates, Saba Learning, Saba Publisher, and Saba Content Builder "provide mechanisms to vary

---

[6] Indeed, IP Learn characterizes the raw test scores as "trickl[ing] up" to the analysis claimed by the patent. (Horton Decl., ¶ 41.) That is insufficient — the patent describes a system in which analysis is done on the prior-to-latest and latest test results *themselves*, not on the "trickle up" of those results.

[7] Claims 2 and 29 of the '909 patent and claims 2 and 23 of the '973 patent are method claims that incorporate this step. (*See* Section III.A, *supra*.)

1 the weighting and mastery score for tests and sections of tests." (Horton Decl., ¶ 54.) That
2 demonstrates only that Saba's products act on a test-by-test basis. Test-specific rules are not
3 subject-specific rules and therefore do not fall within the boundaries of the patent.[8] The claim
4 language is clear; there is no language requiring construction. Subject-specific rules is simply a
5 feature Saba's products do not offer. (Kalikow Opening Decl., ¶ 12; Kalikow Reply Decl., ¶ 4.)
6      Mr. Horton goes on to claim that Saba's test-by-test weighting "can be used to adapt
7 testing to the nature of the subject matter being taught" and so therefore "enable[s] [subject-
8 specific] analysis rule[s]." (Horton Decl., ¶¶ 53-54) Saba disputes that test-specific rules can
9 transform into subject-specific rules in the manner suggested by Mr. Horton, but even if they can
10 Mr. Horton's contention that Saba's products "enable" some particular activity is not enough for
11 infringement. IP Learn must come forward with specific facts demonstrating direct or indirect
12 infringement, which it has not.

     **D.**     **IP Learn Has Failed To Demonstrate That The Accused Product Involves "relationship rules, which determine the relationship between at least two line-items" For "performing inferences on the one or more scores based on the set of relationship rules to generate a recommendation."**

16      Claims 8 and 23 of the '909 patent and claims 10 and 19 of the '973 claim the method of
17 using "relationship rules, which determine the relationship between at least two line-items" to
18 "perform[] inferences on . . . scores based on the set of relationship rules to generate a
19 recommendation."[9]
20      IP Learn's PICs identify the "certifications" feature of Saba Learning as infringing this
21 element. (Melaugh Opening Decl., Ex. F (PICs Chart) at 19-20.) Saba's opening briefing
22 therefore addressed only that feature. IP Learn's Opposition, on the other hand, drops that
23 contention in favor of a claim, offered for the first time, that the weighting of questions on a test
24 constitutes the use of a "relationship rule." As discussed above, and in Saba's Objections To

---

[8] Even Mr. Horton appears to acknowledge that there is a difference between acting on a test-specific basis and acting on a subject-specific basis. (Horton Decl., ¶ 52 (noting that some analysis rules "var[y] from test to test, or subject to subject").)

[9] *See* Section III.A, *supra*, regarding method claims.

1  Evidence And Contentions Offered By IP Learn In Its Opposition To Saba's Motions For
2  Summary Judgment, filed separately, the Court should not permit this "hide the ball" tactic.  (*See*
3  Section I, *supra*.)
4        Even if the Court were to consider this new contention, IP Learn has yet to offer *any*
5  explanation as to how this alleged relationship rule is used to "perform[] inferences on the one or
6  more scores . . . to generate a recommendation."  No mention is made of "inferences" in IP
7  Learn's Opposition, and the sole paragraph devoted to this subject in the voluminous Horton
8  Declaration is similarly silent as to "inferences." (Horton Decl., ¶ 59.)  Neither the certifications
9  feature of Saba Learning, nor its ability to weight tests constitutes the use of "relationship rules,
10 which determine the relationship between at least two line-items" for "performing inferences on
11 the one or more scores based on the set of relationship rules to generate a recommendation."
12 (Kalikow Reply Decl., ¶¶ 6-7.)
13       **E.**    **IP Learn Has Failed To Demonstrate That The Accused Product Involves The Application Of A "complexity-hierarchy to . . . overall**
14            **scores to generate a recommendation."**
15       Claims 11 and 21 of the '909 patent and claim 9 of the '973 patent claim the method of
16 applying a "complexity-hierarchy to . . . overall scores to generate a recommendation."
17       Again, IP Learn's PICs identify the "certifications" feature of Saba Learning as infringing
18 this element.  (Melaugh Opening Decl., Ex. F (PICs Chart) at 22-23.)  And again, IP Learn drops
19 that contention in favor of the newly concocted claim that the weighting of different sections of a
20 test creates a complexity hierarchy that is applied to overall scores to generate a recommendation.
21 As IP Learn's PICs did not identify this feature of Saba Learning as infringing this element, IP
22 Learn should be precluded from surprising Saba in its opposition with this new accusation.  (*See*
23 Section I, *supra*; *see also* Saba's Objections To Evidence And Contentions Offered By IP Learn
24 In Its Opposition To Saba's Motions For Summary Judgment, filed herewith.)
25       Even if the Court allows IP Learn to introduce this heretofore undisclosed infringement
26 contention, this feature of Saba Learning does not infringe.  Weighting different sections of a test
27 differently does not create a "hierarchy" and has nothing to do with "complexity."  (Kalikow
28 Reply Decl., ¶ 8.)  IP Learn's claim that this feature infringes is based solely on Mr. Horton's

1  unsupported claim that unnamed "instructional designers" use question-weighting to construct
2  complexity-hierarchies. (Horton Decl., ¶ 57.) Mr. Horton does not even say that these designers
3  use *Saba Learning* in that fashion. (*Id.*) Again, IP Learn has utterly failed to carry the burden
4  specific to defending a method claim against summary judgment. (*See* Section III.A, *supra*.)

      **F.    IP Learn Has Failed To Demonstrate That The Accused Product Involves A "test including questions from more than one line-item."**

          **1.    It Is Appropriate To Read The Preamble Of These Claims As A Limitation.**

8        IP Learn alleges that without claim construction, it is inappropriate to read the preambles
9  of claims 20 and 25 of the '973 patent as limitations. IP Learn did not, however, identify this
10 issue in its proposed terms for construction or in its proposed claim constructions. (Melaugh
11 Opening Decl., Exs. H & I.) And even now, IP Learn never claims that the language is *not* a
12 limitation. (IP Learn argues only that summary judgment is premature without claim construction
13 finding the preamble as limiting.)
14       If there is any doubt on this point, however, examination of the preambular language in
15 question makes it clear that such language is a limitation. "In general, a preamble limits the
16 invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and
17 vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808
18 (Fed. Cir. 2002) (*quoting Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed.
19 Cir. 1999)). "[W]hen the claim drafter chooses to use both the preamble and the body to define
20 the subject matter of the claimed invention, the invention so defined, and not some other, is the
21 one the patent protects." *Bell Communications Research, Inc. v. Vitalink Communications Corp.*,
22 55 F.3d 615, 620 (Fed. Cir. 1995). Even a cursory examination of the claims at issue reveals that
23 the preamble is necessary to give meaning to the claim:

> 20. A computer-aided learning method for assessing a student's understanding in a subject, which is divided into the line-items with at least one line-item being more difficult than another line-item, the method, using the latest test results from the latest test taken by the student, with the latest test including questions from more than one line-item, comprising the steps of:
>
>     accessing a report format;

| | |
|---|---|
| 1 | accessing a recommendation, which was generated based on the latest test results by a first computing device that can access a network; and |
| 2 | |
| 3 | generating a report by a second computing device, based on the recommendation being transmitted to the second computing device through the network, and based on the report format, to provide assessment of the student's understanding in the subject. |
| 4 | |
| 5 | |

(Melaugh Opening Decl., Ex. C ('973 patent) at 22:11-27; *see also id.* at 23:12-24:5 (claim 25, with similar language).)

Importantly, the preamble defines the term "assessment" (used in the "generating" step) as an assessment of "a student's understanding in a subject [that] is divided into the line-items with at least one line-item being more difficult than another line-item," and the term "latest test results" (used in the "accessing step") as "the latest test results from the latest test taken by the student, with the latest test including questions from more than one line-item." (*Id.*) The preamble is therefore necessary to give meaning to the claim language that follows it, and should be read as a limitation.

### 2. IP Learn Has Failed To Demonstrate That Saba Learning Involves A "test including questions from more than one line-item."

After reading IP Learn's opposition and Mr. Horton's declaration, Saba is still at a loss as to what, precisely, IP Learn claims is a "line-item." IP Learns essentially asserts that because content authoring tools sometimes sold along with Saba Learning (Saba Publisher and Saba Content) do not "seem to put any restrictions on what questions can be included in a test," there are *necessarily* "test[s] including questions from more than one line-item" in Saba Learning. (Horton Decl., ¶ 62.) That is not enough — IP Learn must come forward with facts demonstrating that some party practices the claimed method. (*See* Section III.A, *supra*.) Moreover, as the two claims involving this step (Nos. 20 & 25, from the '973 patent) are both method claims, summary judgment is additionally appropriate given that IP Learn has failed to come forward with any facts indicating that Saba practices this method or, with knowledge of the patent, has induced others to do so. (*Id.*)

SABA'S REPLY RE: SUMMARY JUDGMENT RE: '486 FAMILY
NO. C 02-02634 JW
sf-1504435

11

## IV. IP LEARN HAS FAILED TO RAISE AN ISSUE OF MATERIAL FACT ON INVALIDITY.

### A. Expert Opinion Is Not Necessary To Find A Patent Invalid.

IP Learn seems to be of the belief that because it hired an expert to draft a lengthy declaration and Saba did not, it wins the invalidity issues. This is not the case. Where, as here, the issues in dispute are within the understanding of the Court, no expert opinion is required for the Court to rule on invalidity. (*See* Section II, *supra*; *see also Nutrition 21 v. United States*, 930 F.2d 867, 871 n.2 (Fed. Cir. 1991) ("[a]n expert's opinion on the ultimate legal conclusion [of obviousness] is neither required nor indeed 'evidence' at all."); *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed. Cir. 1983) (no expert testimony necessary on question of obviousness when scope and content of prior art is discernable by court).)

### B. The Hirmanpour Thesis Invalidates The '486 Family.

#### 1. Hirmanpour Analyzes Prior-To-Latest Test Results To Generate A Recommendation.

IP Learn admits that Hirmanpour involves a two-test process to arrive at a recommendation. (Opposition at 14-15; Horton Decl., ¶¶ 122-123.) In Hirmanpour, the analysis of the second test is dependent on the results of the first. (Hirmanpour Decl., Ex. A at SA 6671-6683.) The prior-to-the-latest test (*i.e.*, test 1) determines the focus of the latest test (*i.e.,* test 2), and the ultimate recommendation could not occur without the analysis of both test results. (*Id.*)

In the context of the infringement issues, IP Learn argues that Saba performs an analysis on prior-to-latest test results even though the "analysis" is only a pass/fail assessment of a single numeric score reflecting the latest test result. (*See* Section III.B.) Yet, for purposes of invalidity, IP Learn astoundingly argues that the Hirmanpour thesis does not analyze prior-to-the-latest test results because it focuses on the second test result to the exclusion of the first. (Opposition at 15.) Obviously, IP Learn cannot have it both ways. If Saba, which only takes into account a single numeric score in deciding whether a user has passed a test, is said to be analyzing prior-to-the-latest test results to generate a recommendation, then Hirmanpour, which uses two tests in a two step assessment, must do so as well.

1                      **2.**        **Hirmanpour Uses Subject-specific Analysis Rules.**

2         IP Learn argues that Hirmanpour does not utilize subject-specific analysis rules.

3 (Opposition at 15; Horton Decl., ¶¶ 124-126.) However, Hirmanpour discloses the application of

4 a set of subject-specific analysis rules for the subject of algebra. (Hirmanpour Decl., Ex. A at SA

5 06671.) This is entirely consistent with the "subjects" discussed in the patent. (Melaugh Opening

6 Decl., Ex. A ('486 patent) at 14:60-62 ("The present invention can be applied to different

7 subjects, for example, mathematics, English, history, geography, physics, chemistry and

8 biology").)

9
                     **3.**        **Using The Hirmanpour System On A Network Was Disclosed And Would Have Been Obvious As Of 1995.**
10

11         IP Learn argues that the '973 claims should survive the 1980 Hirmanpour reference

12 because it adds the limitation of a network to the system. However, the Hirmanpour tests were to

13 be administered on a computer "terminal" (Hirmanpour Decl., Ex. A at SA 06650), and

14 Hirmanpour also states that the system could be "modified easily to work on microsystems" (*Id.*

15 at SA 06697.) This certainly suggests that Hirmanpour could function on a network, and by

16 1995, it would have been obvious to one skilled in the art that the Hirmanpour software could be

17 run on computers on a network. *See*, *e.g.*, *In re Raynes*, 7 F.3d 1037, 1040 (Fed. Cir. 1993)

18 (taking judicial notice of ubiquitous technology in the course of obviousness analysis). This is

19 not just "attorney argument." The SuccessMaker product, which is also in this record, was

20 designed to be used on a network. (Declaration of Raymond Ravaglia in Support of Saba

21 Software, Inc.'s Motion for Summary Judgment Re: the '486 Family of Patents, filed May 5,

22 2003 ("Ravaglia Decl."), Ex. A at SA 06238 ("[y]our learning environment may have a computer

23 connecting many microcomputers, or there may be several microcomputers in a local area

24 network with a central file server").) IP Learn cannot seriously expect this Court to conduct a

25 trial on the issue of whether networking more than one computer in an educational setting was

26 obvious as of 1995.

27

28

### C. The SuccessMaker Product Invalidates The '486 Family.

#### 1. SuccessMaker Contains A Score Generator.

IP Learn itself has stated that a score generator is simply "software that generates scores or retrieves test results or test information." (Melaugh Opening Decl., Ex. I.) IP Learn claims that such a generator is not evident in the SuccessMaker citations identified by Saba. To the contrary, however, *all four* of Saba's citations in its opening brief were to places disclosing SuccessMaker's ability to generate scores and/or retrieve test results or information. (Ravaglia Decl., Ex. A at SA 06239-40 (with each session, system updates student's scores); 06242 & 06245-46 (students assessed in multiple phases); 06249 (student assessed over 10 sessions); 06297 (showing "Data From Last Session" and "cumulative" scores); *see also id.*, Ex. B at SA 06429-32 (overall scores are adjusted to reflect the student's combined prior-to-latest and latest test results).) Moreover, each citation displays prior-to-latest and latest test results. (*Id.*)

#### 2. SuccessMaker Generates Recommendations Based On Prior To Latest And Latest Test Results.

As discussed above in Section III.B, IP Learn takes inconsistent positions as to what is required to analyze prior-to-latest and latest test results. It accuses Saba's system of infringement because it has the ability to combine multiple scores into a single score that is then "analyzed" to determine if it meets the numeric passing level or not. But as to invalidity, IP Learn states that SuccessMaker does not anticipate because it looks to combined, averaged, or cumulative scores, alleging that these are not really "prior-to-latest" scores. (Opposition at 19; Horton Decl., ¶¶ 134-137.) Again, IP Learn cannot have it both ways. Even Mr. Horton admits that SuccessMaker compares the results of the latest test results to the cumulative test results and makes adjustments, *i.e.,* generates recommendations in the form of additional exercises in the areas identified as weaknesses, based on both. (Horton Decl., ¶¶ 134-136.) Thus, if a combined test score can be a prior-to-latest test score as IP Learn argues for purposes of infringement, then clearly SuccessMaker anticipates this aspect of the '486 family.

### 3. SuccessMaker's Session Percent Scores Are Test Results.

The claims of the '486 family speak of "prior-to-latest and latest test results." Yet for some reason, IP Learn argues that the "session percent scores" in the SuccessMaker product are not "test scores" for purposes of the patent. (Opposition at 20.) It is irrelevant whether or not "session percent scores" are "test *scores*" — the patent claims the analysis of "test *results*," and session percent scores in the SuccessMaker system are most certainly the results of tests.

### 4. The Court Need Not Wait For Further Construction.

In a last desperate plea to avoid summary judgment, IP Learn asks that the Court delay a ruling on invalidity until further claim construction occurs. IP Learn claims that the parties dispute 10 additional terms. However, IP Learn itself has only asked that three additional terms be construed.[10] (Melaugh Opening Decl., Ex. H.) IP Learn has not demonstrated that any of these terms impact this motion. Moreover, for purposes of this motion only, Saba has no objection to the Court applying IP Learn's construction to these terms. (Melaugh Opening Decl., Ex. I (IP Learn's Proposed Claim Constructions).)

### CONCLUSION

For the foregoing reasons, Saba respectfully requests that the Court find that Saba does not infringe any claim asserted by IP Learn from the '486 family of patents and that the asserted claims from the '486 family of patents are invalid.

Dated: May 28, 2003

MICHAEL A. JACOBS
WESLEY E. OVERSON
FREDERICK S. CHUNG
DAVID E. MELAUGH
MORRISON & FOERSTER LLP

By: s/Michael A. Jacobs
  Michael A. Jacobs

Attorneys for Defendant
SABA SOFTWARE, INC.

---

[10] IP Learn initially claimed that a fourth term — complexity-hierarchy — required construction, but later proposed "complexity-hierarchy" as the construction for complexity-hierarchy. (Melaugh Opening Decl., Ex. I (IP Learn's Proposed Claim Constructions).)