1   COOLEY GODWARD LLP
    THOMAS J. FRIEL (80065)
2   BENJAMIN K. RILEY (112007)
    JAMES P. BROGAN (155906)
3   ANDREW K. KUMAMOTO (178541)
    WAYNE O. STACY (admitted *pro hac vice*)
4   Five Palo Alto Square
    3000 El Camino Real
5   Palo Alto, California  94306-2155
    Telephone:    (650) 843-5000
6   Fax:          (650) 857-0663

7   Attorneys for Plaintiff and Counterdefendant
    IP Learn, LLC
8

9                UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12

13  IP LEARN, LLC,                          Case No.  C 02-02634 JW

14              Plaintiff and
                Counterdefendant,           **IP LEARN'S OPENING BRIEF ON THE**
15                                          **SECOND CLAIM CONSTRUCTION OF IP**
         v.                                 **LEARN'S PATENTS**
16
    SABA SOFTWARE INC.; and DOES 1-10,
17                                          Date:    7/31/03
                Defendant and              Time:    TBA
18              Counterclaimant.           Room:    CR 8, 4th Fl.
                                            Before:  Hon. James Ware
19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO
                                            IP Learn's Opening Brief On the 2nd
                                            Claim Construction of IP Learn's Patents
                                            CASE NO.  C 02-02634 JW (HRT)

TABLE OF CONTENTS

PAGE

I. INTRODUCTION ............................................................................................. 1

II. BACKGROUND AND OVERVIEW OF THE PATENTS-IN-SUIT.................... 1

III. PRINCIPLES OF CLAIM CONSTRUCTION .................................................. 1

    A. Claim Construction Must Begin By Determining The Ordinary Meaning Of
    The Claim Terms. ..................................................................................... 2

    B. Ordinary Meaning Can Be Narrowed In Only Four Limited Circumstances. ............... 3

IV. IP LEARN'S CONSTRUCTION OF THE DISPUTED TERMS............................ 3

    A. "Relationship Rules"............................................................................ 5

        1. The Term "Relationship Rules" Should Be Construed According To Its
        Ordinary Meaning And In Light of The Specification............................... 5

        2. Saba's Proposed Construction Of "Relationship Rules" Improperly
        Abandons Ordinary Meaning, Contradicts The '486 Patent, And
        Introduces New, Ambiguous Terms That Will Require Further
        Court Attention. ................................................................................. 7

    B. "Pre-requisite Rules".......................................................................... 9

        1. The Term "Pre-requisite Rules" Should Be Construed According To Its
        Ordinary Meaning And In Light Of The Specification............................... 9

        2. Saba's Proposed Construction Of "Pre-requisite Rules" Improperly
        Abandons Ordinary Meaning, Contradicts The '486 Patent, And
        Introduces New, Ambiguous Terms That Will Require Further
        Court Attention. ................................................................................. 10

    C. "Inference Engine" ............................................................................ 11

        1. The '486 Patent Sets Forth The Definition Of "Inference Engine." ................. 12

        2. Saba's Proposed Construction Of "Inference Engine" Contradicts The
        '486 Patent And Introduces Unnecessary Ambiguity Into This
        Case. ............................................................................................... 13

    D. "Pre-requisite analyzer" .................................................................... 17

        486 Patent............................................................................................. 18

        2. Saba's Proposed Definition of "Pre-requisite Analyzer" Contradicts The
        '486 Patent. ..................................................................................... 18

    E. "Subject-specific" .............................................................................. 19

        1. "Subject-specific" Is An Unambiguous, Ordinary Term That Should Be
        Construed According To Its Ordinary Meaning. ...................................... 19

        2. Saba's Proposed Construction Of "Subject-Specific" Contradicts
        Ordinary Meaning And The '486 Patent.................................................. 20

    F. "Analyzing the student's prior-to-the-latest and latest test results"............................. 21

    G. "Complexity-hierarchy" ..................................................................... 21

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

i.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
Case No.  C 02-02634 JW (HRT)

TABLE OF CONTENTS
(CONT.)

PAGE

1.  "Complexity-hierarchy" Is An Unambiguous Term That Should Be
Construed According To Its Ordinary Meaning. .......................................... 21

2.  Saba's Proposed Construction Of "Complexity-Hierarchy" Contradicts
The '486 Patent And Unnecessarily Introduces Significant
Ambiguity Into The Claims. .......................................................... 22

H.  The Preambles Of The '448 and '556 Patents ............................................ 23

V. CONCLUSION ............................................................................................. 24

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CASES**

*Allen Engineering Corp. v. Bartell Industries, Inc.,* 299 F.3d 1336, 1346 (Fed. Cir. 2002) ................................................................................................................... 25

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996)................... 2

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366-67 (Fed. Cir. 2002) ................ 2, 3, 6

*Generation II Orthotics Inc. v. Medical Technology, Inc.*, 263 F.3d 1356, 1367 (Fed. Cir. 2001). ........................................................................................................... 4

*Johnson WorldWide Associates v. Zebco Corp.,* 175 F.3d 985, 989 (Fed. Cir. 1999) ................................................................................ 1, 2, 3, 10, 12, 17, 18

*Mantech Environmental Corp. v. Hudson Environmental Services, Inc.,* 152 F.3d 1368, XXX (Fed. Cir. 1998) ........................................................................................... 2

*Renishaw PLC v. Marposs Societa' Per Azioni,* 158 F.3d 1243, XXX (Fed. Cir. 1998) ............................................................................................................................ 22

*Schumer v. Lab. Computer Sys.,* 308 F.3d 1304, 1311 (Fed. Cir. 2002) ...................................... 3

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ............................... 3

*Texas Digital Systems, Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1204 (Fed. Cir. 2002) ................................................................................................................ 2, 3, 12, 19

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ........................... 2, 9

**OTHER AUTHORITIES**

*American Heritage College Dictionary,* p. 1211 (2d ed 1991).................................................... 21

*American Heritage College Dictionary,* p. 1307 (3d ed 2000).................................................... 21

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

1   Pursuant to the Scheduling Order issued on March 21, 2003, Plaintiff IP Learn, LLC ("IP

2   Learn") submits the following opening brief on claim construction.  An initial claim construction

3   hearing was held on February 7, 2003, and the Court issued a ruling on the initial terms on March

4   21, 2003.  A copy of the Court's order is attached as Exhibit A.  The parties now present seven

5   additional terms, all from one family of patents, for construction.

6   **I.      INTRODUCTION**

7        Saba's proposed constructions are a mismatched creation formed of one part ordinary

8   meaning, one part preferred embodiments, and one part Saba non-infringement argument.  The

9   end result succeeds in violating the principles of claim construction set forth by the Federal

10  Circuit and serves to complicate the trial and jury issues for this case.

11       As is shown below, however, claim construction in this case is a straightforward matter

12  that is dictated by ordinary meaning and, in some cases, by the clear words of the specification.

13  IP Learn's proposed constructions are clear and concise and follow the mandates established by

14  the Federal Circuit.  IP Learn's constructions should also clarify the claims for the jury.

15  **II.     BACKGROUND AND OVERVIEW OF THE PATENTS-IN-SUIT**

16       The inventors of the patents-in-suit, Drs. Chi Fai Ho and Peter Tong, have been prolific in

17  the field of computer-aided learning.  Together, Drs. Ho and Tong have filed twenty-four patent

18  applications and have been awarded sixteen patents.  Of those sixteen patents, only the 5,779,486

19  ('486 patent), 5,934,909 ('909 patent); 6,118,973 ('973 patent); 6,126,448 ('448 patent); and

20  6,398,556 ('556 patent) patents are at issue in the present infringement action.  These patents

21  were discussed in greater detail in *IP Learn's Response to Saba's Proposed Claim Terms and*

22  *Claim Elements for Construction*, filed with the Court on January 24, 2003.

23       For convenience, the '486 patent is attached as Exhibit B, the '909 patent as Exhibit C, the

24  '973 patent as Exhibit D, the '448 patent as Exhibit E, and the '556 patent as Exhibit F.

25  **III.    PRINCIPLES OF CLAIM CONSTRUCTION**

26       Claim construction begins, and most often ends, with the language of the claims.  *Johnson*

27  *WorldWide Associates v. Zebco Corp.,* 175 F.3d 985, 989 (Fed. Cir. 1999).  As the Federal

28  Circuit stated, a "court must presume that the terms in the claim mean what they say, and unless

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

1.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

1  otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms."

2  *Id.*   Notably, the ordinary meaning of claim terms can be abandoned only in four limited

3  circumstances, which are described below.  *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359,

4  1366-67 (Fed. Cir. 2002); *Johnson WorldWide*, 175 F.3d at 991.

5
6  **A.   Claim Construction Must Begin By Determining The Ordinary Meaning Of The Claim Terms.**

7      It is well recognized that words of a claim are heavily presumed to carry their ordinary

8  and customary meanings and that any claim construction must begin with an assessment of those

9  ordinary meanings.  *CCS Fitness,* 288 F.3d at 1366; *Vitronics Corp. v. Conceptronic, Inc.*, 90

10  F.3d 1576, 1582 (Fed. Cir. 1996); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573,

11  1578 (Fed. Cir. 1996).   As the Federal Circuit recently stated, "[c]onsulting the written

12  description and the prosecution history as a threshold step in the claim construction process,

13  before an effort is made to discern the ordinary and customary meanings attributed to the words

14  themselves, invites a violation of our precedent counseling against importing limitations into the

15  claims."  *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204 (Fed. Cir. 2002).

16  Accordingly, proper claim construction techniques must start with ordinary meaning and then

17  determine whether the specification or prosecution history alters that meaning.  If the written

18  description is consistent with ordinary meaning, however, the construction inquiry is over, and

19  the term must be construed according to that ordinary meaning.  *Mantech Environmental Corp. v.*

20  *Hudson Environmental Services, Inc.,* 152 F.3d 1368, 1376 (Fed. Cir. 1998).

21      Dictionaries are always available to aid the Court and are particularly relevant to

22  determine the ordinary meaning of terms.  *Texas Digital*, 308 F.3d at 1202; *Teleflex, Inc. v.*

23  *Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).   In fact, they may be the most

24  relevant source of information for determining ordinary meaning because dictionaries are

25  unbiased reflections of common understanding and are not colored by the motives of the parties

26  or inspired by litigation.  *Texas Digital,* 308 F.3d at 1203.  Although technical dictionaries may

27  be required for specialized terms, ordinary dictionaries should be used for non-technical terms.

28  *Schumer v. Lab. Computer Sys.,* 308 F.3d 1304, 1311 (Fed. Cir. 2002).

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

2.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

1

### B.    Ordinary Meaning Can Be Narrowed In Only Four Limited Circumstances.

2

The heavy presumption of ordinary meaning to which terms are entitled can only be

3

overcome in four limited circumstances: (1) where the patentee clearly and explicitly sets forth a

4

definition that is inconsistent with or alters the ordinary meaning of the term; (2) where the

5

patentee clearly and expressly disclaims subject matter using words of manifest exclusion;

6

(3) where the patentee selects a claim term that is so unclear that there is no means by which the

7

scope of the claim can be ascertained; and (4) where the terms are limited by means-plus-function

8

language. *Texas Digital,* 308 F.3d at 1203; *CCS Fitness, Inc.*, 288 F.3d at 1366.  Each of these

9

limited circumstances is described in more detail below.  Absent one of these circumstances,

10

however, terms must be construed according to their ordinary meaning.

11

First, it is improper to narrow the ordinary meaning of a term unless the patentee clearly

12

and explicitly sets forth a definition that is inconsistent with that ordinary meaning.  *Texas*

13

*Digital*, 308 F.3d at 1204; *CCS Fitness*, 288 F.3d at 1366; *Johnson WorldWide*, 175 F.3d at 989-

14

90.  Although the specification may aid the Court in interpreting the meaning of disputed

15

language in the claims, particular embodiments and examples appearing in the specification

16

should not be read into the claims absent a clear reason to do so.  *Johnson WorldWide,* 175 F.3d

17

at 992; *Generation II Orthotics Inc. v. Med. Tech., Inc.*, 263 F.3d 1356, 1367 (Fed. Cir. 2001).

18

Merely setting forth preferred embodiments and alternate embodiments in the specification does

19

not constitute such a clear reason and does not justify reading those embodiments into the claims.

20

In fact, varied use of a disputed term within a patent demonstrates the breadth of the term rather

21

than any type of limitation that should be read into the claims.  *Johnson WorldWide,* 175 F.3d at

22

991.

23

As for issues two, three and four, they are not at issue in the present construction and are

24

not discussed further.  IP Learn, however, discussed this law in detail in its *Response to Saba's*

25

*Proposed Claim Terms and Claim Elements for Construction* filed on January 24, 2003.

26

### IV.    IP LEARN'S CONSTRUCTION OF THE DISPUTED TERMS

27

This section addresses the seven currently disputed terms: "relationship rules," "pre-

28

requisite rules," "inference engine," "pre-requisite analyzer," "subject-specific," "complexity-

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

3.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

hierarchy" and "analyzing the student's prior-to-the-latest and latest test results." All of these terms originate from the '486 family of patents, and in fact, five of the seven terms are closely related to the terms "analysis rules" and "recommendation generator," both of which this Court addressed in its original *Order Re: Claims Construction* issued on March 21, 2003 (referred to as the "Claim Construction Order" and attached as Exhibit A). Before directly addressing the construction of the terms currently at issue, however, a brief explanation of the connection between the previously construed "analysis rules" and "recommendation generator" and the currently disputed terms is provided.

In the original Claim Construction Order, this Court construed the terms "analysis rules" and "recommendation generator" as follows:

| | |
|---|---|
| **Analysis rules:** | **In an educational system which assesses a student's level of understanding of a subject, "analysis rules" is a set of rules used in the assessment.** |
| **Recommendation generator:** | **In an educational system which assesses a student's level of understanding of a subject, the "recommendation generator" is a system and method that produces a recommendation.** |

Exhibit A, Order Re: Claims Construction, p. 7. These two terms are generic references that directly encompass four of the terms at issue in this round of claim construction. For example, relationship rules and pre-requisite rules, which are currently at issue, are specific types of analysis rules. Similarly, an inference engine and a pre-requisite analyzer, both of which are currently at issue, are specific types of recommendation generators. Figure 1 illustrates the connection between these components and the rules that they use.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

4.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

**FIGURE 1**

RECOMMENDATION
GENERATOR

**(Analysis rules)**

INFERENCE
ENGINE

**(Relationship rules)**

PRE-REQUISITE
ANALYZER

**(Pre-requisite rules)**

As Figure 1 illustrates, the inference engine is a type of recommendation generator that applies a specific type of analysis rules, called "relationship rules."  Similarly, the pre-requisite analyzer is a specific type of recommendation generator that applies another type of analysis rules, called "pre-requisite rules."  Further, all rules come in two types: subject-specific and non-subject-specific.  The recommendation generator, for example, could apply either subject-specific analysis rules or non-subject-specific analysis rules.

A.     **"Relationship Rules"**

**Definition**

The term "relationship rules" means "a subset of analysis rules that define relationships among areas of learning."

1.     **The Term "Relationship Rules" Should Be Construed According To Its Ordinary Meaning And In Light of The Specification.**

The ordinary meaning of "relationship rules" is an extremely broad concept that encompasses ideas ranging from the rules of dating to the organization of areas of learning.  Simply put, "relationship rules" are rules that define relationships.[1]  The '486 patent, however, limits the breadth of "relationship rules" to relationships among areas of learning.  IP Learn's

---

[1] The individual terms "relationship" and "rule" are unambiguous, and do not even require resort to the dictionary.  In fact, any attempt to resort to the dictionary to define such clear terms would be nothing more than a needless exercise in word substitution and would not serve to clarify the claims.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

proposed construction reflects the proper scope of this term, and no reason exists to further alter the ordinary meaning of this term.  *See CCS Fitness,* 288 F.3d at 1366.

Notably, the claims, specification, and file history of the '486 patent all use the term "relationship rules" according to its ordinary meaning, as applied to areas of learning.  The '486 patent, for example, describes that relationship rules define how a student's grades in subparts of a course can be rolled-up to determine the student's grade for the overall course.  '486 patent, col. 7, lines 1-67.  The '486 patent expresses this embodiment of relationship rules as a set of Horn's clauses, one example of which is reproduced below:

> G(Int) is A               if G(Int +/-) is A
>                           and G(Int*,/) is A
>                           and G(Int factorization) is A
>                           and G(Int Common Division) is better than B.

'486 patent, col. 7, lines 63-67.  Although these Horn's clauses might be intimidating at first glance, they merely express that the student's grade in the overall course, *Integers*, is related to the student's grades in the subparts of the course: *Integer addition and subtraction; Integer multiplication and division; Integer factorization*; and *Integer common division*.  '486 patent, col. 7, lines 59-67.  Stated differently, this version of relationship rules expresses the relationships between one area of learning and several other areas of learning.  IP Learn's proposed definition is consistent with this embodiment.

In another embodiment, the '486 patent describes relationship rules in which the relationship among areas of learning is expressed as a series of implications.  For example, the '486 patent states that this version of relationship rules could be expressed as:

> Weak in algebra implies weak in geometry;
> Weak in integers implies weak in fractions;
> Weak in algebra implies weak in trigonometry; and
> Weak in geometry implies weak in analytic geometry.

'486 patent, col. 8, lines 11-14.  These relationship rules define the relationship between one area of learning and another area of learning.  Again, IP Learn's proposed definition is consistent with this embodiment.

In yet another embodiment, the '486 patent states that relationship rules "define the

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

6.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

relationship among different areas in the subject." '486 patent, col. 6, lines 56-57. Notably, this version of relationship rules does not relate to a student's grade or understanding, and instead focuses squarely on the relationships among subjects. And once again, IP Learn's proposed definition is consistent with this embodiment.

Because the '486 patent uses the term "relationship rules" to describe several varied embodiments of relationship rules, it would be error to limit the term to any single embodiment. *See, Johnson WorldWide,* 175 F.3d at 991 ("Varied use of a designated term in the written description demonstrates the breadth of the term.") IP Learn's proposed definition properly captures this breadth and remains consistent with both the ordinary meaning of "relationship rule" and the disclosure in the '486 patent.

**2. Saba's Proposed Construction Of "Relationship Rules" Improperly Abandons Ordinary Meaning, Contradicts The '486 Patent, And Introduces New, Ambiguous Terms That Will Require Further Court Attention.**

Saba proposes a labored and complex definition of "relationship rules" that abandons ordinary meaning, contradicts the teachings of the '486 patent, and introduces new, ambiguous terms into this case. Rather than simplifying issues for trial, Saba's proposed construction will likely require further attention from this Court, and potentially the jury, to define new terms such as "connections." Claim construction should bring clarity to a case and should not introduce new ambiguities.

First of all, Saba's proposed construction should be rejected because it impermissibly rewrites the ordinary language of the claims in Saba's own words and imports pieces of some embodiments into the claims while ignoring other embodiments. For example, Saba insists that relationship rules are "rules that define *connections*." Saba is merely substituting its word, "connections" for the actual language of the claim, "relationships." This substitution provides no additional clarity to the claims, and actually introduces new ambiguity. First, it is unclear as to how, or if the terms "connections" and "relationships" supposedly differ, and if the two terms do not differ, then Saba's proposed word substitution is unnecessary. Second, if Saba is somehow asserting that the scope of the two terms differs, then Saba cannot justify its proposed word substitution in light of the specification, file history and claims of the '486 patent. Either way,

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

7.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO. C 02-02634 JW (HRT)

1  however, Saba's proposed substitution of "connections" for "relationships" is unnecessary and
2  should be rejected.

3     Saba's proposed construction is further flawed because it focuses on a single embodiment
4  disclosed in the '486 patent while improperly brushing aside alternate embodiments that do not
5  match its proposed construction. For example, Saba rewrites the term "relationship rule" as "a
6  rule that defines the connections between a student's level of understanding in one area of
7  learning and the student's level of understanding in another area of learning *(e.g., 'If a student is*
8  *weak in algebra, then the student is weak in geometry.')*." Saba makes no effort to disguise the
9  fact that it is importing a single embodiment from the specification into the claims. The language
10 "if a student is weak in algebra, then the student is weak in geometry" is pulled almost word-for-
11 word from col. 8, line 11 of the '486 patent. The Federal Circuit has made clear that it is
12 improper to read a preferred embodiment from the specification into the claims absent a clear
13 reason to do so. *CCS Fitness*, 228 F.3d at 1366. No such reason exists in this case.

14    Saba also conveniently ignores the passage in which the '486 patent states that "[t]hese
15 [relationship] rules define the relationship among different areas in the subject." '486 patent, col.
16 6, lines 56-57. Nothing in this passage requires "connections between a student's level of
17 understanding" as proposed by Saba. In fact, this passage teaches that relationship rules do not
18 always involve a student's level of understanding. Any constructions that require a connection
19 based on a student's level of understanding improperly contradicts the clear teachings of the '486
20 patent.

21    Saba's proposed construction of "relationship rules" further excludes another preferred
22 embodiment of relationship rules, Horn's clauses.[2] '486 patent, col. 7, lines 55-66. In particular,
23 Saba's proposed construction improperly introduces a one-to-one correspondence between areas
24 of learning by tying "*one*" area of learning to "*another*" area of learning. The '486 patent,
25 however, makes clear that the Horn's-clauses version of relationship rules determines the
26 relationship between an area of learning, such as *Integers*, and several other areas of learning,

---

[2] The '486 patent states "[i]n yet another preferred embodiment, the relationship rule is
represented by a set of Horn's clauses." '486 patent, col. 7, lines 55-56.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

8.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO. C 02-02634 JW (HRT)

such as *Integer addition and subtraction, Integer multiplication and division, Integer factorization, and Integer Common Division.* This is a one-to-many relationship, not a one-to-one relationship as required by Saba. Saba's proposed construction, nonetheless, improperly excludes this disclosed one-to-many relationship, and any construction, such as the one offered by Saba, that excludes a preferred embodiment is rarely, if ever, correct. *Vitronics,* 90 F.3d at 1583.

### B. "Pre-requisite Rules"

### Definition

The term "pre-requisite rules" means "a subset of analysis rules that define pre-requisites among areas of learning."

### 1. The Term "Pre-requisite Rules" Should Be Construed According To Its Ordinary Meaning And In Light Of The Specification.

The term "pre-requisite rules" is found in the '486 and '909 patents, and consists of two common, clear terms: "pre-requisite" and "rules." Both of these terms are unambiguous and any attempt to further define them would be nothing more than an exercise in word substitution and would most likely introduce unnecessary ambiguities into the claims—ambiguities that would undoubtedly cause further disagreement between the parties.

As with "relationship rules," the '486 patent makes clear that "pre-requisite rules" are a subset of analysis rules that apply to areas of learning. IP Learn's proposed definition reflects this contextual limitation but does not deviate further from ordinary meaning.

The claims, specification, and file history of the '486 patent all use the term "pre-requisite rules" according to its ordinary meaning, as applied to areas of learning. That is, the '486 patent uses the term "pre-requisite rules" to indicate a type of analysis rule that defines pre-requisites among areas of learning. For example, claim 13 of the '486 patent recites that "the analysis rules are pre-requisite rules, which, based on the complexity levels of the line-items, establish a complexity-hierarchy among the line items." '486 patent, col. 20, lines 60-63 (claim 13). Claim 13 expressly limits the breadth of the "pre-requisite rules" term by stating how the pre-requisites are defined (through the complexity-hierarchy) and among which areas of learning (the line-items) the rules apply. IP Learn's proposed definition is consistent with this embodiment.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

9.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO. C 02-02634 JW (HRT)

1    Other claims in the '486 patent family, however, indicate the breadth of the term "pre-

2    requisite rules." *See Johnson WorldWide,* 175 F.3d at 991.  Claim 11 of the '909 patent, for

3    example, recites only that "the analysis rules include pre-requisite rules."  '909 patent, col. 23,

4    line 16 (claim 11).  This claim purposefully does not link pre-requisite rules to any type of

5    hierarchy or line items.   IP Learn's proposed definition is consistent with each of these

6    embodiments.

7        Similarly, the specification of the '486 patent states that "[f]or the embodiment with the

8    pre-requisite analyzer, the analysis rules include a set of pre-requisite rules."  '486 patent, col. 6,

9    lines 49-51.  No limits are placed on the breadth of the term "pre-requisite rules" in this

10   embodiment.   In other embodiments, however, the specification uses the term "pre-requisite

11   rules" in a narrower sense.   The '486 patent, for example, states that "[i]n one preferred

12   embodiment, each [pre-requisite] rule includes a line-item and its pre-requisite."  '486 patent, col.

13   9, lines 54-55.  In this embodiment, the pre-requisite for *Fraction addition and subtraction*

14   *without common denominators* is both *Fraction addition and subtraction with common*

15   *denominators* and *Fraction addition and subtraction with integers.   Id.*   In yet other

16   embodiments, pre-requisite rules can be applied between subjects, such as history, geography and

17   physics, rather than between line-items as demanded by Saba.  '486 patent, col. 14, lines 60-64.

18   IP Learn's proposed construction is consistent with these embodiments of "pre-requisite rules" as

19   well as the other varied uses taught in the '486 patent.

20       **2.    Saba's Proposed Construction Of "Pre-requisite Rules" Improperly**
21       **Abandons Ordinary Meaning, Contradicts The '486 Patent, And Introduces**
         **New, Ambiguous Terms That Will Require Further Court Attention.**

22       Saba again proposes a labored and complex definition of a disputed term that improperly

23   abandons ordinary meaning, contradicts the '486 patent, and introduces new, ambiguous terms

24   into this case.  This time, Saba proposes to transform "pre-requisite rules" into rules "that classify

25   'line-items' into a hierarchy in which a more-difficult 'line-item' cannot be reached until a less-

26   difficult 'line-item' is first reached."[3]  This construction resembles portions of some embodiments

27   _____

28   [3] Saba's proposed construction of "pre-requisite rule" is very similar to its proposed definition of
     "complexity-hierarchy."

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

10.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

1   disclosed in the '486 patent, but is not entirely consistent with any of them.

2   First, Saba's proposed construction of "pre-requisite rules," if adopted, will introduce

3   more ambiguities into this case than its construction resolves.   In fact, Saba's proposed

4   construction of "pre-requisite rules" might well require a claim construction hearing of its own to

5   define terms such as "classifies" and "mastered."

6   Second, Saba's proposed construction of "pre-requisite rules" should be rejected because

7   it contradicts the ordinary meaning of the term and the teachings of the '486 patent.   For

8   example, Saba's proposed construction requires that one line-item be "mastered" before

9   proceeding to another line item.   Saba's requirement that a line-item be "mastered," no matter

10   what the exact meaning and scope of the term, contradicts the '486 patent, which states that "one

11   may not have to achieve an A at the highest level of a line-item before one can advance to

12   another line-item."   '486 patent, col. 11, lines 34-36.   Thus, the '486 patent discloses that a

13   student could advance with a grade of "B" or "C," neither of which indicate mastery.   The term

14   "mastered," accordingly, has no place in the construction of "pre-requisite rules."

15   Saba also proposes to add the term "hierarchy" into the construction of "pre-requisite

16   rules."   Saba, however, blends two separate concepts in this construction: pre-requisite rules and

17   complexity-hierarchy.   The pre-requisite analyzer can use pre-requisite rules to generate a

18   complexity-hierarchy, but pre-requisite rules do not necessarily "classify" areas of learning into a

19   "hierarchy," as required by Saba's proposed definition.   '486 patent, col. 9, lines 46-53.   In fact,

20   "pre-requisite rules" can be applied among subjects that are not arranged in any type of hierarchy

21   such as English, history, geography, and physics.   *Id.* at col. 14, lines 60-63.   Saba is again

22   attempting to ignore these alternate embodiments and read a single embodiment from the patent

23   into the claims.

24   **C.**      **"Inference Engine"**

25   **Definition**

26   The phrase "inference engine" means "software[4] that applies relationship rules to

27   _____

28   [4] For simplicity, this issues for the terms "inference engine" and "pre-requisite-analyzer" have
      been focused on software.  However, both of these terms can refer to hardware, software, and/or

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

11.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

determine a student's level of understanding in a subject or line item."

**1.      The '486 Patent Sets Forth The Definition Of "Inference Engine."**

"Inference engine" is one of the rare terms in this case that is defined by the '486 patent and that is not subject to ordinary meaning.  *See Texas Digital,* 308 F.3d at 1203.  The specification of the '486 patent sets forth several embodiments of an inference engine from which a proper construction can be derived.  This varied use of the term "inference engine" illustrates the breadth to which the term is entitled.  *See Johnson WorldWide,* 175 F.3d at 991.

All of the varied embodiments of the inference engine have one thing in common: they apply relationship rules to determine a student's level of understanding in a subject or line-item.  IP Learn's proposed construction reflects this common attribute and properly construes "inference engine" to encompass the varied use of the term.  *See id.*  For example, the claims of the '486 patent set forth several different versions of an inference engine.  Three of these versions are illustrated in Table 1.

**TABLE 1: Versions of the inference engine**

| CLAIM 23 | CLAIM 41 | CLAIM 15 |
|---|---|---|
| an *inference engine* coupled to the score generator for:<br><br>• accessing a set of relationship rules that define relationships among the line items;<br>• determining the student's level of understanding in each line-item . . . ;<br>• providing recommendation . . .;<br>• resolving conflict among one or more relationship rules<br><br>(bullets and emphasis added) | an *inference engine* coupled to the score generator for<br><br>• accessing as set of relationship rules . . .;<br>• determining the student's level of understanding in the one or more line items<br><br>(bullets and emphasis added) | an *inference engine*, which determines the student's level of understanding in each line-item . . . by applying a set of relationship rules. |

Some of the versions of the inference engine shown in Table 1 recite very specific implementations.  Claim 23, for example, describes an inference engine that performs four steps: (1) accessing relationship rules, (2) determining the student's level of understanding,

some mix of software and hardware.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

12.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

(3) providing a recommendation, and (4) resolving conflicts among relationship rules.  Claim 41, however, describes a much simpler version in which the inference engine only (1) accesses the relationship rules and (2) determines the student's level of understanding.  Claim 15 describes yet a simpler inference engine that only determines a student's level of understanding by applying relationship rules.  Each of these embodiments of the inference engine share one common feature: they determine a student's level of understanding by applying a set of relationship rules. IP Learn's proposed definition reflects this and is consistent with each of the embodiments.

Another embodiment of an inference engine is illustrated in Figure 6 of the '486 patent. Briefly, this comprehensive version of the inference engine can perform five functions: (1) access a set of relationship rules, (2) apply the relationship rules to entries in a test results table, (3) resolve conflicts between relationship rules, (4) resolve conflicts between the relationship rules and the entries in the test results table, and (5) determine a student's level of understanding in a subject. '486 patent, Figure 6.  Both the claims and the specification, however, indicate that not all versions of the inference engine must perform all five steps.[5]  '486 patent, col. 6, line 53 through col. 9, line 44; claim 15; claim 41.  In fact, the various embodiments of the inference engine need only determine a student's level of understanding using the relationship rules, and IP Learn's proposed construction reflects this fact.

**2.  Saba's Proposed Construction Of "Inference Engine" Contradicts The '486 Patent And Introduces Unnecessary Ambiguity Into This Case.**

Saba again proposes a hybrid definition that has been assembled from pieces of the '486 patent and, presumably, pieces of Saba's non-infringement argument.  The result is a construction of "inference engine" that is supported by neither the '486 patent nor ordinary meaning, and that introduces several new, ambiguous terms into this case.  In fact, Saba's definition of "inference engine" reads more like an entire patent claim than a proper definition.  According to Saba, "inference engine" should be construed as:

*An apparatus that*

*(i)        applies 'relationship rules' to a student's test scores from one area of*

---

[5] Saba's proposed definition of "inference engine" even concedes that an inference engine need not perform all five steps.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

13.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

*learning to infer the student's level of understanding in another area of learning (e.g., 'Because the student's test scores are weak in algebra, the student is weak in geometry.');*

*(ii)    uses these inferences to make recommendations (e.g., 'Because the student's test scores are weak in algebra, the student should study algebra more than studying geometry.'); and*

*(iii)    resolves conflicts between 'relationship rules' when such rules call for conflicting inferences.*

This proposed construction is even punctuated like a patent claim.

Saba's proposed construction is flawed for several reasons.  First, Saba's proposed construction introduces several new, ambiguous terms into this case that in themselves require further construction.  For example, what is a "conflicting inference?"  This term is foreign to the '486 patent.  Similarly, what does "uses these inferences" or "when such rules call for" mean?  Neither of these phrases are defined by the '486 patent and may only have meaning in Saba's non-infringement arguments.  It is highly unlikely that a proper claim construction can introduce previously-unknown ambiguities into the claims.

Second, Saba's proposed definition of "inference engine" must be rejected because it contradicts the express teachings of the '486 patent.  Tables 2 and 3 show a side-by-side comparison of Saba's proposed construction of "inference engine" and actual embodiments disclosed in the '486 patent.  As shown in these Tables, Saba's proposed construction includes several limitations that are not found in the actual embodiments of the inference engine.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

14.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

**TABLE 2:  Comparison of embodiments of the inference engine**

| Saba's Proposed Construction of Inference Engine | Claim 23 | Claim 41 |
|---|---|---|
| An apparatus that:<br>• (i) applies 'relationship rules' to a student's test scores from one area of learning to infer the student's level of understanding in another area of learning (*e.g.*, 'Because the student's test scores are weak in algebra, the student is weak in geometry.');<br>• (ii) uses these inferences to make recommendations (*e.g.*, 'Because the student's test scores are weak in algebra, the student should study algebra more than studying geometry.'); and<br>• (iii) resolves conflicts between 'relationship rules' when such rules call for conflicting inferences.<br>(bullets added for clarity) | an *inference engine* coupled to the score generator for:<br>• accessing a set of relationship rules that define relationships among the line items;<br>• determining the student's level of understanding in each line-item . . . by applying the set of relationship rules ;<br>• providing [a] recommendation . . .;<br>• resolving conflict among one or more relationship rules<br>that is not subject to ordinary meaning<br><br>(bullets and emphasis added) | an *inference engine* coupled to the score generator for<br>• accessing as set of relationship rules . . .;<br>• determining the student's level of understanding in the one or more line items by applying the set of relationship rules<br>(bullets and emphasis added) |

For example, Saba's proposed construction requires "applying relationship rules to a student's test scores in *one* area of learning to infer the student's level of understanding in *another* area of learning."  As shown in Tables 2 and 3, none of these disclosed embodiments require this one-to-one relationship between "*one*" area of learning and "*another*" area of learning.[6]  Saba's proposed construction requires a limitation that is simply not in these embodiments.

As previously discussed, however, the '486 patent discloses embodiments of the inference engine that use a one-to-many relationship.  That is, the '486 patent discloses an embodiment of the inference engine that determines a student's grade in a course based upon the student's grades

---

[6] In one embodiment, the '486 patent discloses making inferences such as "weak in integers implies weak in fractions."  '486 patent, col. 8, line 12.  This embodiment, however, is just one of several described alternate embodiment illustrating how an inference engine can operate.

in several portions of that course. '486 patent, col. 7, lines 55-67. In the specific example described in the patent, the student's grade in *Integers* is based upon four portions of that course: *Integer addition and subtraction; Integer multiplication and division; Integer factorization*; and *Integer common division*. Saba's proposed one-to-one correspondence directly and unjustifiably contradicts this one-to-many embodiment and, consequently, cannot be correct.

**TABLE 3:  Comparison of embodiments of the inference engine**

| Saba's Proposed Construction of Inference Engine | Claim 15 | '486 Patent, Figure 6 |
|---|---|---|
| An apparatus that:<br>• (i) applies 'relationship rules' to a student's test scores from one area of learning to infer the student's level of understanding in another area of learning . . .;<br><br>• (ii) uses these inferences to make recommendations . . .; and<br><br>• (iii) resolves conflicts between 'relationship rules' when such rules call for conflicting inferences.<br>(bullets added) | an *inference engine*, which determines the student's level of understanding in each line-item . . . by applying a set of relationship rules.<br><br>(bullets and emphasis added) | *Inference engine* 408 performs the following:<br><br>• access relationship rules;<br><br>• apply the relationship rules to entries in the test results table;<br><br>• resolve conflict among the rules and the contents in the test results table;<br><br>• resolve conflict among rules; and<br><br>• determine the student's level of understanding in the subject<br><br>(bullets and emphasis added) |

Saba's proposed construction also requires that an inference engine "use[s] these inferences to make recommendations." This language again contradicts the '486 patent in several instances. For example, the '486 patent states that "the inference engine determines the student's level of understanding in the subject to provide recommendations to the student." '486 patent, col. 2, lines 48-50. Similarly, the '486 patent states that "the inference engine operates on the test results table to generate recommendations." '486 patent, col. 8, lines 21-22 (reference numbers omitted). The inference engine in both of these examples uses a student's level of understanding or the test results table, not inferences, to generate recommendations. Saba conveniently

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

16.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO. C 02-02634 JW (HRT)

1    overlooks or ignores these alternate embodiments and proposes a construction that contradicts the

2    '486 patent.

3        Finally, Saba proposes to improperly import a conflict resolution requirement from one

4    preferred embodiment of the inference engine into the claims.  The preferred embodiment on

5    which Saba appears to rely is illustrated in Figure 6, and the conflict resolution steps are

6    illustrated at steps 456 and 458.  '486 patent, Figure 6.  Curiously, Saba proposes to import only

7    one of the two described conflict resolution steps into the claims.

8        The text accompanying Figure 6 demonstrates that, unlike Saba's proposed construction,

9    only some embodiments of the inference engine actually resolve conflicts.  For example, the '486

10   patent states that "[i]n one preferred embodiment, the inference engine can resolve relationship

11   rules that are in conflict, or are not fully consistent."  '486 patent, col. 8, lines 37-40  (reference

12   numbers omitted).  Note the patent's use of the phrases "in one preferred embodiment" and "can

13   resolve."   These are not words of absolute requirement and instead indicate that some

14   embodiments of the inference engine do not resolve conflicts.  Thus, it is improper to read this

15   limitation into the claims.  *See CCS Fitness,* 288 F.3d at 1366.  Similarly, claims 15 and 41 of the

16   '486 patent indicate that conflict resolution is not always a part of an inference engine.

17   Nonetheless, Saba proposes to read such a limitation into every version of inference engine.

18       The Federal Circuit makes clear that embodiments from the specification should not be

19   read into the claims absent a clear reason to do so.  *CCS Fitness,* 288 F.3d at 1366; *Johnson*

20   *WorldWide,* 175 F.3d at 989-90.  No such reason exists for this term.  The '486 patent's use of

21   conditional words such as "in one preferred embodiment" and "can" actually teach away from

22   reading embodiments from the specification into the claim, and the '486 patent's varied use of

23   "inference engine" suggests that the term is entitled to substantial breadth.   Saba's narrow

24   construction, consequently, should be rejected.  *See Johnson WorldWide,* 175 F.3d at 991.

25       **D.       "Pre-requisite analyzer"**

26       **<u>Definition</u>**

27       The phrase "pre-requisite analyzer" means "software that applies pre-requisite rules to

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

17.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

determine a student's level of understanding in a subject or line item."

1.      **The Term "Pre-requisite Analyzer" Should Be Construed In Light of The 486 Patent.**

"Pre-requisite analyzer" is another one of the rare terms in this case that is not subject to ordinary meaning and that requires inspection of the specification. *See Texas Digital,* 308 F.3d at 1203.  The breadth of this term is indicated by its varied usage in the '486 patent. *See Johnson WorldWide,* 175 F.3d at 991.   All of the varied embodiments, however, have one aspect in common: they apply pre-requisite rules to determine a student's level of understanding in a subject or line item.

The first type of pre-requisite analyzer disclosed in the '486 patent, for example, determines a student's level of understanding by applying a complexity-hierarchy, which is generated using pre-requisite rules.  '486 patent, col. 20, lines 63-67 (claim 13).  Another type of pre-requisite analyzer actually establishes a complexity-hierarchy among certain line items and then determines a student's level of understanding using that complexity-hierarchy.  '486, col. 24, lines 1-4 (claim 36).  In yet another embodiment, the pre-requisite analyzer does not use a complexity-hierarchy, but rather generates recommendations directly from the pre-requisite rules. '486 patent, col. 18, lines 53-56 ("[T]he pre-requisite analyzer does not generate a hierarchy.").

These embodiments are based on one common, core attribute: they apply pre-requisite rules to determine a student's level of understanding.  IP Learn's definition of "pre-requisite analyzer" is consistent with each of these embodiments and reflects this common attribute.

2.      **Saba's Proposed Definition of "Pre-requisite Analyzer" Contradicts The '486 Patent.**

The core concept of the "pre-requisite analyzer" is its use of "pre-requisite rules*." See, e.g.,* '486 patent, col. 2, lines 36-38 ("The pre-requisite analyzer accesses pre-requisite rules."); col. 9, lines 48-50 ("The [pre-requisite] analyzer accesses 502 the pre-requisite rules."); col. 18, lines 53-56 ("[T]he pre-requisite analyzer does not generate a hierarchy; it accesses the pre-requisite rules and applies them directly . . . to generate recommendations.")  Saba's proposed construction of "pre-requisite analyzer," however, never mentions "pre-requisite rules."  This failure to consider this fundamental concept demonstrates that Saba's proposed construction of is

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

18.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

flawed.

As Saba did with "inference engine," Saba proposes a definition of "pre-requisite analyzer" that looks more like a claim than a proper definition. Saba proposes the following:

*An apparatus that:*

    *(i)    applies a complexity-hierarchy to a student's test scores to determine a student's level of understanding in each tested 'line-item'; and*

    *(ii)   on that basis makes recommendations (e.g., 'You need to study double-digit addition more before you can move on to triple-digit addition.')*

Part "i" of Saba's definition requires applying a complexity-hierarchy. This requirement is in direct contradiction to the '486 patent, which states that in one embodiment "the pre-requisite analyzer **does not** generate a [complexity] hierarchy; [rather] it accesses the pre-requisite rules and applies them directly to the test results table to generate recommendation for the student." '486 patent, col. 18, lines 53-56. Saba's proposed definition cannot be correct in light of this express statement in the '486 patent.

Saba's proposed definition also requires that the complexity-hierarchy be applied to determine a student's level of understanding in *each tested line-item*. Again, this requirement contradicts the express teachings of the '486 patent, which indicate that the pre-requisite analyzer can determine the student's level of understanding in a *subject*, not just a line-item. '486 patent, col. 9, lines 48-53 ("The pre-requisite analyzer then applies the hierarchy to entries in the test results table, such as the overall scores, to determine the student's understanding level in the *subject*.") (reference numbers omitted) (emphasis added). Saba's proposed definition excludes this preferred embodiment, and a definition that excludes a preferred embodiment cannot be correct. *See, e.g., Vitronics*, 90 F.3d at 1583.

### E.    "Subject-specific"

**Definition**

"Subject-specific" means "special, distinctive, or unique to a subject."

### 1.    "Subject-specific" Is An Unambiguous, Ordinary Term That Should Be Construed According To Its Ordinary Meaning.

"Subject-specific" is an unambiguous term that should be construed according to its

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

19.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO. C 02-02634 JW (HRT)

1  ordinary meaning.  The first term in the phrase, "subject" has a well-known, ordinary meaning

2  and requires no additional attention.  For example, the *American Heritage College Dictionary*

3  defines "subject" as "a course or area of study." *American Heritage College Dictionary,* p. 1211

4  (2d ed 1991) (attached as Exhibit G)..  Substituting this definition into the construction of the

5  term "subject-specific" is unnecessary and provides no additional clarity for the parties or the

6  jury.  Accordingly, IP Learn's proposed definition leaves "subject" simply as "subject."

7      As for the term "specific," this term does not necessarily require resort to the dictionary,

8  but the dictionary definition may provide some clarity.  The *American Heritage College*

9  *Dictionary* defines "specific" as "special, distinctive, or unique as a quality or attribute."

10  *American Heritage College Dictionary,* p. 1307 (3d ed 2000) (attached as Exhibit H).  When this

11  dictionary definition is combined with the term "subject," the resulting definition for "subject-

12  specific" is "special, distinctive, or unique to a subject."  The '486 patent and file history are

13  consistent with this definition and, consequently, no reason exists for deviation.  *See CCS*

14  *Fitness,* 288 F.3d at 1366.

### 2.     Saba's Proposed Construction Of "Subject-Specific" Contradicts Ordinary Meaning And The '486 Patent.

17      Saba ignores all dictionary definitions and construes "subject-specific" as "pertaining to a

18  particular area of learning."  Saba's construction improperly reads the term "specific" out of the

19  claim and makes no distinction between "subject-specific" and "non-subject-specific."  This

20  construction is repugnant to ordinary meaning and cannot be correct.

21      For example, the '486 patent uses "subject-specific" and "non-subject-specific" to refer

22  to distinct and opposite types of analysis rules.  '486 patent, col. 19, lines 11-21.  Per Saba's

23  construction, a subject-specific analysis rule would be an analysis rule that "pertains to a

24  particular area of learning."  A non-subject-specific analysis rule, however, can also "pertain to a

25  particular area of learning."  Thus, according to Saba's construction, a non-subject-specific

26  analysis rule and a subject-specific analysis rule are equivalent.  The '486 patent makes clear,

27  however, that this is not the case and that subject-specific analysis rules are different from non-

28  subject-specific analysis rules.  Any construction that equates two opposite terms must be

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

20.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

incorrect.  Saba's proposed construction, consequently, should be rejected.

**F.     "Analyzing the student's prior-to-the-latest and latest test results"**

**Definition**

"Analyzing the student's prior-to-the-latest and latest test results" requires no construction or alteration.

**1.     The Words Of This Phrase Are Sufficiently Clear.**

The phrase "analyzing the student's prior-to-the-latest and latest test results" is sufficiently clear and does not require further attention from the Court.  This phrase should be left simply as is.

Saba's proposed construction of the "analyzing" phrase proposes to repeat the word "analyzing" and change the original phrase to read: "analyzing the student's prior-to-the-latest and **analyzing the** latest test results."  Saba's proposed modifications to the original language are shown in bold.  As the Federal Circuit held, however, a claim must explicitly recite a term in need of definition before that term can be construed.  *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).   The "analyzing" phrase recites no such term and is not in need of construction.

Saba's proposed construction merely rewrites the claim in its own words.  This proposed construction does not add clarity to the claim and, if adopted, would not simplify issues for the jury.  Moreover, this needless repetition of the word "analyzing" would likely introduce an new ambiguity into this case that will require further Court attention.  Saba's proposed rewrite of the claims, accordingly, should be rejected.

**G.     "Complexity-hierarchy"**

**Definition**

The phrase "complexity-hierarchy" requires no further construction and means simply "complexity-hierarchy."

**1.     "Complexity-hierarchy" Is An Unambiguous Term That Should Be Construed According To Its Ordinary Meaning.**

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

21.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

"Complexity-hierarchy" is an unambiguous term that should be construed according to its ordinary meaning.  The first term in the phrase, "complexity," has a well-known, ordinary meaning and requires no additional attention.  Substituting a dictionary definition for the definition of "complexity" is unnecessary and would provide no additional clarity to the claims.  Accordingly, IP Learn's proposed definition leaves "complexity" simply as "complexity."

As for the term "hierarchy," it also has a well-known, ordinary meaning and requires no further attention.  For example, the *American Heritage Dictionary* defines it as "a body of entries arranged in a graded series."  Such "hierarchies" are found throughout everyday life, from the organization of this brief to company organization charts.  The term is clear and does not need further construction.  Such a substitution would not serve to clarify the claims or any issues for trial.  IP Learn's proposed definition avoids this unnecessary word substitution.[7]

The '486 patent and its file history use "complexity-hierarchy" according to its ordinary meaning.  For example, the '486 patent states that "[t]o move up the complexity level in a line-item, the student has to satisfy all of the pre-requisites of that complexity level."  '486 patent, col. 10, lines 12-17.  This language indicates that a "complexity-level" is merely an ordering or arrangement of areas of learning, *e.g.,* line-items, according to difficulty.  The '486 patent also states that "[t]he complexity-hierarchy describes the pre-requisites and the grade or mastery that a student achieves for each pre-requisite before the student can advance to the next level of complexity."  *Id.* at col. 10, lines 6-9.  Again, this language indicates that a complexity-hierarchy is nothing more that an ordering or arrangement of areas of learning according to complexity.

**2.    Saba's Proposed Construction Of "Complexity-Hierarchy" Contradicts The '486 Patent And Unnecessarily Introduces Significant Ambiguity Into The Claims.**

In its construction of "complexity-hierarchy," Saba has again created something that is part ordinary meaning, part preferred embodiment, and part Saba non-infringement position.  Saba's proposed construction succeeds only in violating the principles of claim construction set

---

[7] Although the term "complexity-hierarchy" is clear and does not require resort to the dictionary for construction, IP Learn acknowledges that "complexity-hierarchy" could be defined as "an arrangement of areas of learning according to complexity" and still be consistent with ordinary meaning and the '486 patent.  Either construction would be proper.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

22.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

1   forth by the Federal Circuit.

2        For example, Saba proposes to define "complexity-hierarchy" as "a classification system

3   of each 'line-item' within a subject, such that mastery of a less-difficult 'line-item' is a necessary

4   prior condition to advancing to a more-difficult 'line-item.'"  Saba's proposed definition directly

5   contradicts the '486 patent, which teaches that students can advance between levels of

6   complexity in the same-line item rather than advancing only between less-difficult and more

7   difficult line-items.  '486 patent, col. 10, lines 3-6 ("To move up the complexity-hierarchy, such

8   as to move to a certain complexity level in a line-item, the student has to satisfy all of the pre-

9   requisites of that complexity level in the line-item.").  That is, according to the '486 patent, the

10  complexity-hierarchy describes how a student can advance from one complexity level to another

11  complexity level.  Saba's proposed construction unjustifiably excludes this embodiment by

12  focusing solely on advancing between line-items.

13       Further, Saba's proposed construction focuses on "mastery" of a line-item.  The '486

14  patent discloses that "mastery" can apply to complexity-levels.  '486 patent, col. 10, lines 4-16.

15  But the '486 patent makes quite clear that "mastery" is not the sole basis for advancing between

16  complexity levels or line-items.  For example, the '486 patent states that "one may not have to

17  achieve an A at the highest level of a line-item before one can advance to another line-item."

18  '486 patent, col. 11, lines 34-36.  Saba's use of the word "mastery" excludes this alternate

19  embodiment, and its proposed construction must be rejected.

20       **H.      The Preambles Of The '448 and '556 Patents**

21       Saba contends that the preambles of the '448 and '556 patent are limiting.  Rather than

22  identifying which claims or what language in the preambles are allegedly limiting, Saba

23  generally states that "the preambular language from each asserted independent claim is properly

24  read as a limitation."[8]  Unfortunately, neither IP Learn nor this Court has any way to tell which

25  preambles Saba actually believes are limiting, and by failing to identify such critical information,

26

27  _____

    [8] Although some of the language in some of the preambles could be limiting, as Saba knows
28  preambles are not generally limiting.  *See, e.g., Allen Engineering Corp. v. Bartell Industries,
    Inc.,* 299 F.3d 1336, 1346 (Fed. Cir. 2002).  ("Generally, the preamble does not limit the claims.")

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

23.

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)

1   Saba has deprived IP Learn of any realistic opportunity to address the preambles in its opening

2   claim construction brief.[9]

3   **V.     CONCLUSION**

4        For the reasons set forth above, IP Learn respectfully requests that the Court adopt IP

5   Learn's proposed construction of the claim terms and reject Saba's attempts to improperly rewrite

6   the claims.

7   Dated: June 26, 2003                           COOLEY GODWARD LLP

8

9                                                  _____/s/ **James P. Brogan**_____

10                                                  James P. Brogan
                                                    Attorneys for Plaintiff
11                                                  IP Learn, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27   [9] After holding a draft of the Joint Claim Construction Statement ("JCCS") for months, Saba
     introduced this dispute over the preamble language for the first time only hours before the JCCS
28   was due.  Saba never raised this issue in a meet and confer, even though one was held on the
     Friday before the JCCS was due.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO                                          24.              IP Learn's Opening Brief On the 2nd
                                                                    Claim Construction of IP Learn's Patents
                                                                    CASE NO.  C 02-02634 JW (HRT)

1

2   199021 v3/CO
    49kd03!.DOC

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IP Learn's Opening Brief On the 2nd
Claim Construction of IP Learn's Patents
CASE NO.  C 02-02634 JW (HRT)