COOLEY GODWARD LLP
THOMAS J. FRIEL, JR. (80065)
BENJAMIN K. RILEY (112007)
JAMES P. BROGAN (155906)
ANDREW KUMAMOTO (178541)
WAYNE O. STACY (admitted *pro hac vice*)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Plaintiff
IP LEARN LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IP LEARN, LLC,<br><br>　　　　Plaintiff and Counterdefendant,<br><br>　　v.<br><br>SABA SOFTWARE INC.; and<br>DOES 1-10,<br><br>　　　　Defendant and Counterclaimant.<br><br>AND RELATED COUNTERCLAIMS. | No. C 02-02634 JW (HRL)<br><br>**IP LEARN'S REPLY BRIEF ON THE SECOND CLAIM CONSTRUCTION OF IP LEARN'S PATENTS**<br><br>Date:　　　September 26, 2003<br>Time:　　　9:00 a.m.<br>Judge:　　　Honorable James Ware<br>Courtroom:　8 (4th floor) |

　　　　Plaintiff IP Learn, LLC submits the following reply brief on claim construction. IP Learn addressed seven terms in its Opening Brief On the Second Claim Construction of IP Learn's Patents (the "Opening Brief"). Saba conceded, in its Responsive Brief On the Second Claim Construction of IP Learn's Patents (the "Responsive Brief"), that IP Learn's proposed construction of two of those terms was correct. Five terms remain for construction, and of those five terms, Saba has conceded that two of its constructions should be modified in light of IP

Learn's arguments. For the Court's convenience, IP Learn has set forth both parties presently proposed claim constructions in Exhibit 1.

## INTRODUCTION

Claim construction unequivocally begins with ordinary meaning, and the words of a claim are heavily presumed to carry that ordinary meaning. *See, e.g., Texas Digital Systems, Inc. v. Telegenix,* 308 F.3d 1193, 1202 (Fed. Cir. 2002) ("The terms used in the claims bear a 'heavy presumption' that they mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art."); *Johnson Worldwide Associates Inc., v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ("We begin, as with all claim interpretation analyses, with the language of the claims."). Despite a legion of Federal Circuit cases on point, Saba fails to address this presumption or even acknowledge ordinary meaning in most cases.[1] In particular, Saba ignores the fact that if a patent's specification is consistent with the ordinary meaning of a claim term, then the claim construction inquiry is over. *See, Mantech Environmental Corp. v. Hudson Environmental Services, Inc.,* 152 F.3d 1368, 1374 (Fed. Cir. 1998) ("If the written description supports the definition of the term that is apparent from the claim limitation, then reading in a further limiting definition would be improper.").

Instead of addressing ordinary meaning as required, Saba attempts to focus the entire claim construction analysis on the specifications of IP Learn's patents. The Federal Circuit has warned that such construction techniques can lead to erroneous results, and in this case, Saba's flawed techniques have done just that. *See, Texas Digital,* 308 F.3d at 1204 ("Consulting the written description and prosecution history as a threshold step in the claim construction process .

---

[1] Saba does argue that "a phrase as to which there is no common usage requires resort to surrounding claim language and the specification to properly interpret, regardless of whether the phrase's constituent words are individually definable." Saba cites no authority for its position, and in fact, Saba's position is contrary to Federal Circuit precedent. *See, e.g., Johnson Worldwide* 175 F.3d 985, 989; *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366-67 (Fed. Cir. 2002) (reversing a claim construction of "reciprocating member" that was contrary to ordinary meaning).

. . invites a violation of our precedent."). Saba's proposed constructions improperly abandon ordinary meaning and improperly import material from the specification into the claims. Such constructions cannot be correct. *See, id.*

Even if Saba could rebut the presumption of ordinary meaning to which IP Learn's claims are entitled, which it cannot, Saba's proposed definitions would still be wrong because they contradict IP Learn's '486, '909, and '973 patents (collectively referred to as the "'486 patent family").[2] In some cases, Saba's proposed constructions improperly exclude many preferred and alternate embodiments expressly described in the patents. Such constructions are rarely, if ever, correct. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir. 1996). These contradictions, as well as Saba's other construction mistakes, are set forth below in more detail.

## ARGUMENT

### I. "Relationship rules"

**IP Learn's definition:** *a subset of analysis rules that define relationships among areas of learning.*

**Saba's definition:** *a rule that defines the connections between a student's level of understanding in an area or areas of learning and the student's level of understanding in another area of learning (e.g. 'If a student is weak in algebra, then the student is weak in geometry.').*

The term "relationship rule" is presumed to carry its ordinary meaning. *See, e.g., Texas Digital,* 308 F.3d at 1202. IP Learn's definition reflects this ordinary meaning and is consistent with the specification of the '486 patent. (*See Opening Brief* at 5-7.) Consequently, the

---

[2] U.S. Patent No. 5,779,486 is referred to as the '486 patent and is attached as Exhibit B to IP Learn's Opening Brief. The specification of the '486 patent is equivalent to the specifications for U.S. Patent Nos. 5,934,909 (the "'909 patent") and 6,118,973 (the "'973 patent"), which are attached as Exhibits C and D to IP Learn's Opening Brief. For simplicity, IP Learn refers primarily to the '486 patent.

construction inquiry need go no further. *See*, *Mantech,* 152 F.3d at 1374. "Relationship rules" should be construed according to its ordinary meaning.

Saba offers no evidence rebutting the heavy presumption of ordinary meaning to which the term "relationship rule" is entitled. In particular, Saba points to no evidence demonstrating that the ordinary meaning of "relationship rules" is inconsistent with the specification of the '486 patent. And, even if Saba could point to such evidence, its proposed construction of "relationship rule" would still be wrong because it contradicts the specification.[3]

Saba, for example, insists that "relationship rules" must apply to a "student's level of understanding in an area of learning." The '486 patent, however, teaches otherwise. It states that in a preferred embodiment relationship rules "define the relationship among different areas in the subject, such as the relationship[s] among the line-items, the minor-topics, the major-topics and the subject." '486 patent, col. 6., lines 56-59; (*see also* Opening Brief at 8.) This passage teaches that relationship rules do not always apply to a "student's level of understanding," and any construction, such as Saba's, that always links relationship rules with a student's level of understanding cannot be correct. *See, Vitronics,* 90 F.3d at 1583.

Saba also proposes to substitute the word "connection" for the word "relationship." Such word substitution is neither proper nor necessary, and Saba should not be permitted to substitute its words for the original language of the claim. Saba offers no justification for its substitution other than to state that the "word 'connections' conveys a clearer sense of the scope of the patent." IP Learn disagrees. The scope of the term "connections" is unclear and, if such a term is imported into the definition of "relationship rules," the parties will undoubtedly disagree over the scope of the term in the future.

Some of that disagreement will likely focus on whether "connections" is narrower than "relationships," and Saba suggests just this in its Responsive Brief. IP Learn disagrees. More importantly, however, if Saba is attempting to narrow the ordinary meaning of "relationships,"

---

[3] Saba acknowledged part of this contradiction and consented to the replacement in its original construction of the word "area" with the phrase "area or areas."

its proposed construction should be rejected. "Relationships" is a common term and the specification of the '486 patent uses "relationships" according to its ordinary meaning. Saba has offered no reason to deviate from that ordinary meaning, and its efforts to do so should be rejected. *See Texas Digital,* 308 F.3d at 1202-03.

II.     **"Pre-requisite rules"**

**IP Learn's definition:** *a subset of analysis rules that define pre-requisites among areas of learning.*

**Saba's definition:** *a rule that classifies 'line-items' into a hierarchy in which a more-difficult 'line-item' cannot be reached until a less-difficult 'line-item' is first mastered.*

As with the term "relationship rule," the term "pre-requisite rule" is presumed to carry its ordinary meaning. *See, Texas Digital,* 308 F.3d at 1202. IP Learn's definition reflects this ordinary meaning, and the specification of the '486 patent is consistent with that ordinary meaning. (*See* Opening Brief at 9-10.) Consequently, the construction inquiry is over, and the term "pre-requisite rules" should be construed according to its ordinary meaning as set forth in IP Learn's definition. *See Mantech,* 152 F.3d at 1374.

Saba again begins its claim construction analysis by focusing on the specification of the '486 patent and fails to address the presumption of ordinary meaning. In particular, Saba fails to indicate why the ordinary meaning of "pre-requisite rules" is supposedly inconsistent with the '486 patent. Without such evidence, the ordinary meaning of "relationship rules" should prevail, and Saba's proposed definition should be rejected. *See Texas Digital,* 308 F.3d at 1202-03.

Even if Saba could point to some evidence that justifies abandoning ordinary meaning, which it cannot, Saba's proposed definition, would still be wrong because it contradicts the specification in at least three instances. First, Saba improperly introduces the term "mastered" into the definition of "pre-requisite rule."[4] The *American Heritage Dictionary* defines the equivalent term, "mastery," as "full command of a subject of study." *American Heritage*

---

[4] This term is not found in the '486 patent family.


*Dictionary* 771 (2d ed 1991); (*See* Stacy Decl. Ex.1.) The '486 patent, however, discloses that a pre-requisite can be satisfied by marginal command of a subject of study. '486 patent, col. 11, lines 34-35 ("One may not have to achieve an A at the highest level of a line-item before one can advance."). Saba's concept of "mastery" inexplicably contradicts this portion of the '486 patent and should not be introduced into the definition of "pre-requisite rules."[5]

Second, Saba improperly links pre-requisite rules solely to line-items.[6] The '486 patent discloses that pre-requisite rules can be applied among both line-items and **subjects**. '486 patent, col. 14, lines 60-63; (*see also* Opening Brief at 11.) Saba's proposed definition, however, would prevent the application of pre-requisite rules to subjects.

Third, Saba improperly links pre-requisite rules to a hierarchy.[7] As Saba correctly noted, pre-requisite rules can apply to areas of learning arranged in a hierarchy. The '486 patent, however, also discloses that pre-requisite rules can apply to areas of learning **not** arranged in a hierarchy, such as among the unrelated subjects English, history, and geography. '486 patent, col. 14, lines 60-63; (*see also* Opening Brief at 11.) Saba's proposed definition is inconsistent with this portion of the '486 patent and, consequently, should not be adopted.

### III.   "Pre-requisite analyzer"

**IP Learn's definition**: *software that applies pre-requisite rules to determine a student's level of understanding in a subject or line item.*

**Saba's definition**: *an apparatus that:*

 *(i) applies a complexity-hierarchy to a student's test scores to determine a student's level of understanding in each tested subject; and*

---

[5] Saba argues that a "decent understanding" is equivalent to "mastery." The dictionary contradicts this argument. At best, Saba is introducing unnecessary ambiguity into this case by introducing "mastery" into the definition of "pre-requisite rule."

[6] The Court previously defined "line-item" as a "subdivision of the subject, with at least one line item being more difficult than another line item." Order Re: Claims Construction, (March 21, 2003) (attached as Exhibit A to IP Learn's Opening Brief).

[7] Saba has created an ambiguity with the introduction of the term "hierarchy." Although Saba hints that a "hierarchy" is the same as a "complexity-hierarchy," Saba does not establish the difference between the two terms. IP Learn considers the two terms to be separate and distinct.

*(ii) on that basis makes recommendations (e.g. 'You need to study double-digit addition more before you can move on to triple digit addition.').*

As IP Learn indicated in its Opening Brief, the specification of the '486 patent qualifies the ordinary meaning of "pre-requisite analyzer." (*See* Opening Brief at 18.) The definition proposed by IP Learn tracks ordinary meaning as closely as possible, but also takes into account the express teachings of the specification that qualify that ordinary meaning.[8] IP Learn's proposed definition is consistent with all the varied uses of the term in the '486 patent family. (*See*, *id.*) Saba does not dispute this fact.

Saba's proposed definition, however, is not consistent with the '486 patent family and inexplicably contradicts it in at least two instances. First, Saba's proposed definition requires applying a "complexity-hierarchy to a student's test scores." The '486 patent states, in direct contradiction to Saba's definition, that "the pre-requisite analyzer **does not** generate a [complexity] hierarchy; [rather] it accesses the pre-requisite rules and applies them directly to the test results table." '486 patent, col. 9, lines 48-53 (emphasis added). Saba's definition cannot be correct in light of this contradiction, and in fact, Saba fails to even address the issue even though IP Learn raised it in the Opening Brief.

Second, Saba's proposed definition requires that the pre-requisite analyzer "determine a student's level of understanding in each tested *subject*." The '486 patent, however, teaches that the pre-requisite analyzer can determine a student's level of understanding in both **a subject and a line-item.** '486 patent, col. 2, lines 36-44 and col. 10-64-66; (*see also* Opening Brief at 19.) Saba's proposed definition excludes "line-items" and, consequently, should not be adopted.

In footnote 2 of its Responsive Brief, Saba "consents" to the replacement of "determining a student's level of understanding in each tested *'line-item'*" with "determining a student's level of understanding in the tested *subject*." Saba misses the point. Substituting "subject" for "line-

---

[8] IP Learn's claim construction approach to this term is consistent with its approach to all other terms: begin with ordinary meaning and only modify that ordinary meaning in accordance with the guidelines set forth by the Federal Circuit.

item" does not cure the error in Saba's original definition. The '486 patent family discloses that the pre-requisite analyzer can determine a student's level of understanding in both a line-item and a subject. Any definition, such as Saba's, that does not account for both line-items and subjects cannot be correct.

IV. **"Analyzing the student's prior-to-the-latest and latest test results"**

    **IP Learn's definition:** The language of the claim should not be altered.

    **Saba's definition:** *analyzing the student's prior-to-the-latest and analyzing the latest test results.*

Saba's proposed construction of this phrase merely tweaks the original claim language by repeating the word "analyzing." The original claim language, however, is not ambiguous and requires no tweaking. In fact, Saba does not even allege that the original phase is ambiguous. Saba, instead, sheepishly points to an "apparent ambiguity."[9] Either the claim is ambiguous or it is not, and in this case it is not. With no ambiguity in the claim language, Saba is not entitled to rewrite the claim as it sees fit.

Even if the this phrase contained an ambiguity, which it does not, Saba fails to demonstrate how repeating the word "analyzing" would resolve that ambiguity. Based upon the complexity of Saba's other proposed definitions, IP Learn suspects that Saba is quietly attempting to alter, rather than clarify, the ordinary meaning of the original claim language. To the degree that Saba is attempting to alter the ordinary meaning, its proposed construction is improper and should be rejected. *See Texas Digital,* 308 F.3d at 1202-03.

V. **"Complexity-hierarchy"**

    **IP Learn's definition:** The language of this term is unambiguous and should not be altered.[10]

---

[9] Saba makes reference to IP Learn's positions during the summary judgment proceedings. Saba, however, seriously mischaracterizes IP Learn's position.

[10] As indicated in IP Learn's Opening Brief, "complexity-hierarchy" could also be defined as "an arrangement of areas of learning according to complexity" and still be consistent with ordinary meaning and the '486 patent family.

**Saba's definition:** *a classification system of each 'line-item' within a subject, such that mastery of a less-difficult 'line-item' is a necessary prior condition to advancing to a more-difficult line-item.*

Saba once again improperly begins its claim construction analysis by focusing on the specification of the '486 patent. And once again, Saba fails to explain why the ordinary meaning of "complexity-hierarchy" is inconsistent with the specification. Without such explanation, Saba cannot rebut the presumption of ordinary meaning to which "complexity-hierarchy" is entitled, and its proposed definition should be rejected. *See Texas Digital,* 308 F.3d at 1202-03.

Even if Saba could point to evidence suggesting that deviation from the ordinary meaning of "complexity-hierarchy" is proper, Saba's proposed construction would still be wrong because it contradicts the specification in at least two instances. First, Saba's proposed definition links "complexity-hierarchy" with "mastery." "Mastery," as previously described, is not a concept in the '486 patent, and "mastery" is not required to advance between areas of learning. "Mastery," consequently, should not be part of the definition of "complexity-hierarchy."

Second, Saba's proposed definition improperly limits the application of the complexity-hierarchy to only "line-items." This definition contradicts the '486 patent, which discloses two ways for a student to move up the complexity-hierarchy. One, the student can advance from one line-item to another line-item, or two, the student can advance from one level in a line-item to the next level within that same line-item. '486 patent, col. 10, lines 3-6. In the second embodiment, the student is moving within a line-item rather than between line-items. Saba's proposed definition is inconsistent with this second embodiment and should be rejected.[11]

---

[11] Although IP Learn raised this issue in its Opening Brief, Saba failed to offer any explanation other than to state that its proposed definition is consistent with at least one embodiment described in the '486 patent.

## CONCLUSION

For the reasons set forth above, IP Learn respectfully requests that the Court adopt IP Learn's proposed constructions.

Dated: July 24, 2003

                                                COOLEY GODWARD LLP


                                    By: /s/ Wayne O. Stacy
                                                  Wayne O. Stacy
                                        Attorneys for Plaintiff IP LEARN, LLC